## PHOENIX ASSUR. CO. v. LUCKER.

(Circuit Court of Appeals, Fourth Circuit. May 5, 1896.)

### No. 147.

1. TRIAL—PROVINCE OF COURT AND JURY—DIRECTING VERDICT.
 The court should not direct the jury to find a verdict for the defendant, unless the conclusion follows, as a matter of law, that no recovery can be had

upon any view which can properly be taken of the' facts which the evidence tends to establish.

2. APPEAL—REVIEW—EXCEPTIONS TO INSTRUCTIONS.

An exception, "to so much of" a long and elaborate charge "as requires the evidence should show there was an intention to deceive," is too general, and presents no point which an appellate court can consider.

In Error to the Circuit Court of the United States for the District of South Carolina.

Geo. M. Trenholm, for plaintiff in error.

J. P. K. Bryan, for defendant in error.

Before SIMONTON, Circuit Judge, and HUGHES and PAUL, District Judges.

PAUL, District Judge. This case is here on a writ of error to a judgment of the circuit court for the district of South Carolina. It was an action brought in the state court by Minnie Lucker, the plaintiff below, against the Phœnix Assurance Company of London, the defendant below, and removed by the defendant into the United States circuit court. It was on a policy of fire insurance, in the sum of $2,800, on two frame dwelling houses and certain household furniture contained in one of the dwellings. The case was tried in the court below by a jury, and a verdict rendered for the plaintiff for the sum of $2,400, on which judgment was entered.

The record contains all the testimony introduced on the trial. There are in the record 16 assignments of error. These assignments of error, from 1 to 7, inclusive, are based on the refusal of the court to instruct the jury to find a verdict for the defendant. The following are the instructions asked for by the defendant on that branch of the case:

"(1) That, upon the whole evidence, it so conclusively appears that the plaintiff fraudulently, knowingly, willfully, and with intent to deceive the defendant as to the actual loss sustained, and as to the belief of the said Elias Venning, trial justice aforesaid, as to the amount of loss, caused said false and erased certificate to be furnished to the defendant as a bona fide certificate of the said Elias Venning, trial justice aforesaid, and for such reason no verdict in favor of the plaintiff can be sustained by the court. (2) That, from the whole evidence, it so conclusively appears that the plaintiff swore falsely in stating, under oath, that she had signed with her own hand papers furnished to the defendant as proofs of loss of March 7 and May 4, 1894, that for this reason no verdict for the plaintiff can be sustained. (3) That it appears, from the whole evidence, so conclusively, that the plaintiff willfully and knowingly caused false and fraudulent proofs of loss to be furnished to the defendant, that for this reason no verdict for the plaintiff can be sustained. (4) That, from the whole evidence, it so conclusively appears that the plaintiff knowingly ratified and confirmed fraudulent and false proofs of loss, furnished the defendant, that for this reason no verdict for the plaintiff can be sustained. (5) That, from the whole evidence, it so conclusively appears that the plaintiff willfully and knowingly swore falsely to the following statement, made under oath, viz. 'that, under the original contract of erection, the corner building cost was to be about $2,700, according to the information of deponent,' that for this reason no verdict for the plaintiff can be sustained. (6) That, from the whole evidence, it so conclusively appears that the plaintiff willfully and knowingly swore falsely to the following statement, made under oath, 'that the carpenter or builder who erected it was McGilvery, of Charleston, S. C.; who failed,' that on this ground no verdict for the plaintiff can be sustained. (7) That, from the whole evidence, it appears that the plaintiff failed to furnish defendant, upon requirement,

verified plans and specifications of the building destroyed. That on this ground no verdict for plaintiff can be sustained."

The judge of the circuit court refused to give any of these instructions, and allowed the case to go to the jury, for the reason that there was such a conflict in the evidence on all the questions presented by these instructions as to make it a proper case for submission to the jury. An examination of the testimony as it appears in the record fully sustains the action of the court below in refusing to direct a verdict for the defendant upon any of the grounds requested. These instructions, asked for and refused, were all based upon evidence introduced by the defendant to prove that the plaintiff had violated the conditions of the policy in the following particulars: By causing a false and erased certificate of proof of loss to be furnished the defendant; that she willfully and knowingly caused false and fraudulent proofs of loss to be furnished the defendant, and that she had ratified and confirmed such false and fraudulent proofs of loss; that she had sworn falsely in stating that she had signed with her own hand proofs of loss furnished the defendant; that under a contract for the erection of one of the buildings it was to cost $2,700, and that the builder was a man named McGilvery; and that she had failed to furnish the defendant, upon requirement, verified plans and specifications of the buildings destroyed. On all these questions the plaintiff introduced witnesses whose evidence conflicted with that offered by the defendant, or was explanatory of the statements made by the plaintiff in connection with the proofs of loss.

The evidence of the defendant on which its first instruction was asked showed that the certificate of loss given by Venning, a trial justice, fixed the amount at $2,800, and that this amount, when the certificate reached the defendant, had been changed to $5,250. The defendant alleged that this alteration had been made by the plaintiff, or with her knowledge and consent. The plaintiff testified that she had not made the change, and had not approved or ratified it. Her husband, C. W. Lucker, who acted as her agent in getting up the proofs of loss, testified that he had not changed the certificate, and the plaintiff's attorney testified that the certificate had not been changed when he mailed it to the defendant company.

As to the charge that the plaintiff had sworn falsely in stating, under oath, that she signed with her own hand papers of March 7 and May 4, 1894, furnished to the defendant as proofs of loss, the plaintiff testified that she signed that of March 7, 1894, and that she acknowledged it before the justice, Venning, about five minutes after she had signed it. The justice testified that she acknowledged the signature as hers. The plaintiff also testified that she appeared before J. W. Polite, notary public, and signed her name to the paper, the proof of loss, of May 4, 1894. As to the signature of the plaintiff to the proof of loss of March 7, 1894, there being a question as to whether she had signed her name herself, or whether her husband had signed it for her, the circuit court instructed the jury "that, if they find that the plaintiff, Minnie Lucker, directed her husband

to sign in her name proofs of loss dated March 7, 1894, and afterwards acknowledged the same as her signature, as appears by the attestation signed by Trial Justice Venning, then such signature and oath and proofs of loss are in law the signature, oath, and proofs of Minnie Lucker, the plaintiff, and she had the right to make them so." That was a proper instruction. Whether the plaintiff actually with her own hand signed the proof of loss, or whether her husband signed it for her, if she acknowledged the signature before the justice and the notary public to be hers, it had the same effect, in law, whether made by herself or her husband as her agent. In law these were her signatures.

As to the charge that the plaintiff swore falsely in stating, under oath, that the original cost of erecting the dwelling house was $2,700, the plaintiff testified that her husband had told her this was to be the cost of the building, that her husband also told her that McGilvery had contracted to build the house, and that she saw McGilvery measuring on the lot about the time the building was commenced.

As to the charge on which the seventh instruction was asked by the defendant, that the plaintiff failed to furnish, when required, verified plans and specifications of the buildings burned, the record shows that plans and specifications were furnished when required, and that they were verified by the signature of Simons & Holmes, the architects who made them, and by the affidavit of S. Lewis Simons, one of said architects.

The substance of the testimony on behalf of the plaintiff, as we have stated it, shows that, on all the grounds on which the court was requested to direct a verdict for the defendant, there was a very decided conflict in the evidence. It presents such a state of facts as to bring the case clearly within the province of the jury for its decision. For the court to have refused to submit the case to the jury, and to have directed a verdict for the defendant, would have been an unwarranted invasion of the principles governing jury trials. The question as to when the court, on all the evidence, should instruct the jury to find a verdict for the defendant, has been decided in numerous cases. The result of the decisions is that when the evidence given at the trial, with all the inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if rendered, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant; while, on the other hand, the case should be left to the jury unless the conclusion follows, as matter of law, that no recovery can be had upon any view which can be properly taken of the facts which the evidence tends to establish. Kane v. Railroad Co., 128 U. S. 94, 9 Sup. Ct. 17; Railroad Co. v. Woodson, 134 U. S. 615, 10 Sup. Ct. 628; Pleasants v. Fant, 22 Wall. 116; Randall v. Railroad Co., 109 U. S. 478, 3 Sup. Ct. 322; Dunlap v. Railroad Co., 130 U. S. 649, 9 Sup. Ct. 647.

When there is a conflict of evidence, as we find in this case, on all the questions on which the court was requested to direct a ver-

dict for the defendant, the law is clearly settled as to the duty of the court to submit the case to the jury. In Insurance Co. v. Ward, 140 U. S. 76, 11 Sup. Ct. 720, the court said: "There was evidence in the case going to discredit, in some particulars, the evidence offered by the defense to prove the breach of the condition in the policy; and it was eminently proper that all of that evidence should be taken into consideration and weighed by the jury, under proper instructions from the court, in arriving at their verdict."

"Where a cause fairly depends upon the effect or weight of testimony, it is one for the consideration and determination of the jury, under proper directions as to the principles of law involved. It should never be withdrawn from them, unless the testimony be of such a conclusive character as to compel the court, in the exercise of a sound judicial discretion, to set aside a verdict returned in opposition to it." Insurance Co. v. Doster, 106 U. S. 32, 1 Sup. Ct. 20.

The exception to the refusal of the court to direct a verdict for the defendant was properly made, and the seven assignments of error which we have considered were in accordance with the exception taken. The remaining assignments of error, from 8 to 16, inclusive, are not founded on any exceptions to the rulings of the court below which this court can consider. The only exception in the record on which these assignments of error are based is what is called in the record "Exception to Charge," made after the court had concluded its charge to the jury, and is in the following words: "By Mr. Trenholm: I ask your honor to note our exception as to the direction which we asked, and also to note our exception to so much of the charge which requires the evidence should show that there was intention to deceive." And then follows this argumentative statement by defendant's counsel: "Because we take this position, that a statement which is false, and intentionally and willfully made, as to material matters, the law conclusively presumes the intention to deceive, and that such willful and knowingly false statement is in law fraudulent, and that without any further evidence on that point; and in the charge which your honor has made, the only objection we have is on that ground." To this statement the court replied: "By the Court: The exception is noted, and, inasmuch as the request has been made in the presence of the jury, the court wishes to repeat that the false statement which vitiates a policy must be a fraudulent, false statement." Counsel for the defendant duly noted then and there an exception to the above ruling on grounds above stated. "I will just say, in conclusion, that if there have been false statements made by the plaintiff in her proofs of loss, or in her estimates, or in any other matter connected with the policy since the fire, those statements will vitiate the policy,—will operate to prevent her recovery,—if you believe they are fraudulent, false statements made with the intention to deceive." To this last statement of the court no exception was taken.

The charge to the jury, in the bill of exceptions, embraces 18 pages of the printed record. The court is asked to go through this lengthy charge, and ascertain, for its information, the particular part or

parts thereof to which shall be applied so general an exception "to so much of the charge as requires the evidence should show there was an intention to deceive." This is a labor the court will not assume. It is the duty of the party taking the exception to specifically designate the portion of the charge to which he excepts, and he should state in totidem verbis, or as near as may be, the same. Rule 10 of this court provides:

"The judges of the circuit and district courts shall not allow any bill of exceptions which shall contain the charge of the court at large to the jury in trials at common law, upon any general exception to the whole of such charge. But the party excepting shall be required to state distinctly the several matters of law, in such charge, to which he excepts; and those matters of law, and those only, shall be inserted in the bill of exceptions and allowed by the court." 11 C. C. A. ci., 47 Fed. vi.

The requirements of this rule have not been complied with in the case before us, but entirely disregarded. The practice of making the whole charge to the jury a part of the bill of exceptions has been frequently condemned by the supreme court. Insurance Co. v. Raddin, 120 U. S. 195, 7 Sup. Ct. 505; Carver v. Astor, 4 Pet. 80; Magniac v. Thompson, 7 Pet. 348; Zeller v. Eckert, 4 How. 288; U. S. v. Rindskopf, 105 U. S. 418. This court is disposed to strictly enforce the rule, in order to avoid the inconveniences arising from its nonobservance.

A reference to some of the authorities on this subject will show the particularity required by the courts in the preparation of bills of exceptions:

Beaver v. Taylor, 93 U. S. 54: "Before the case was submitted to the jury, the plaintiff requested the court to charge as set forth by him in eight several propositions. The court declined to charge as requested, but charged in its own language, and fully, upon the case as presented by the evidence. The plaintiff excepted to the refusal of the court, and excepted, also, 'to so much of the charge of the court as given as was in conflict with and variant from the several propositions' presented by him."

The court held that the bill of exceptions failed to present any point that it could consider.

Beckwith v. Bean, 98 U. S. 284: "Touching these objections to the charge of the court, it is sufficient to say that they are not presented by the bill of exceptions in such form that we should consider them. The only exceptions to the charge are in these words: 'To the omission of the court to charge as requested, and to the charge of the court placing a construction upon said acts of congress, and to so much of the charge as relates to the attempted justification of the defendants under said acts, and the evidence hereinbefore detailed, the defendants excepted.' * * * The exceptions to the charge as given are too vague and indefinite to raise the questions which were claimed in argument to arise under the acts of 1863 and 1867. Lincoln v. Claflin, 7 Wall. 132; McNitt v. Turner, 16 Wall. 362; Beaver v. Taylor, 93 U. S. 46. The exception is scarcely more definite than a general exception to the whole charge would have been. We cannot tell what specific portions of the elaborate charge * * * were intended to be covered by this general exception."

These cases fully sustain the views of the court as to the exceptions under consideration. We find no error in the record. The judgment of the circuit court is affirmed.