## CHAPMAN v. YELLOW POPLAR LUMBER CO.

(Circuit Court of Appeals, Fourth Circuit. November 1, 1898.)

### No. 270.

1. APPEAL AND ERROR—PROCEDURE IN TRIAL COURT AFTER REVERSAL.
   Where a judgment is reversed by the circuit court of appeals, and by its mandate the circuit court is directed to order a new trial, it is proper for such court to refuse to make the order conditional on the payment of the costs of the former trial.

2. PLEADING—AMENDMENT—DISCRETION OF COURT.
   The refusal of a trial court to permit the amendment of pleadings is within its discretion, and will not be reviewed unless clearly unreasonable.

3. REVIEW—HARMLESS ERROR.
   Rulings on the admission of evidence, though erroneous, are without prejudice, and immaterial to be considered on appeal, where the court subsequently, and properly, directed a verdict, because of matters not controlled or affected by such evidence.

4. TRIAL—DIRECTION OF VERDICT.
   Where it is clear to a trial court that, as a matter of law, no recovery can be had by the plaintiff upon any view which can properly be taken of the facts the evidence tends to establish, a verdict should be directed for the defendant.
   Morris, District Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Virginia.

J. F. Bullitt, Jr., and Richard C. Dale, for plaintiff in error.

John N. Baldwin (Burns & Ayers and C. F. Trigg, on the brief), for defendant in error.

Before GOFF and SIMONTON, Circuit Judges, and MORRIS, District Judge.

GOFF, Circuit Judge. For a statement of the facts and of the law applicable to this case reference is made to the opinion of this court filed therein heretofore. 42 U. S. App. 21, 20 C. C. A. 503, and 74 Fed. 444. The judgment rendered in favor of the plaintiff below was reversed when this case was first before this court, and the court below was directed to grant a new trial, and to proceed in the man-

ner indicated by the opinion then filed. When the case came on to be again heard below, that court set aside the verdict, granted a new trial, refused permission to the plaintiff below to file an amended declaration, and overruled his motion for the payment of costs in the former trial. ·The case was then tried to a jury, and at the close of all the testimony the jury, by direction of the court, returned a verdict for the defendant. The case comes now again before us on assignments of error relating to the action of the court in refusing to allow an amended declaration to be filed, in refusing to require the defendant below to pay the costs of the former before proceeding with the new trial, in excluding evidence offered by the plaintiff, in admitting evidence offered by the defendant, and in directing a verdict for the defendant below.

The court was clearly right in refusing to require the defendant to pay the costs of the former trial before granting a new trial. This court had attached no such condition to its judgment, and its mandate required the verdict of the jury to be set aside, and a new trial had. The provision of the Code of Virginia (section 3545, Code 1887) relating to the payment of costs in certain cases where new trials are granted had no application to the circumstances surrounding this controversy at the time the court below so acted. The judgment below, in this respect, properly followed the mandate of this court, and is without error. In re Washington & G. R. Co., 140 U. S. 91, 11 Sup. Ct. 673; Gaines v. Rugg, 148 U. S. 228, 13 Sup. Ct. 611; In re Sanford Fork & Tool Co., 160 U. S. 247, 16 Sup. Ct. 291.

The motion made by the plaintiff to amend the declaration was one to be determined by the court below from the facts, circumstances, and conditions existing at the time it was so made. It was within the discretion of the trial judge, and his action is not subject to review here, unless it was entirely unreasonable. An examination of the pleadings as originally filed and subsequently amended, and of the proceedings had relating thereto, both in this and in the court below, induces us to concur in the conclusion reached by the trial judge in denying the plaintiff's application to amend his declaration, especially in the absence of explanation of the reason of the delay in presenting the same, there being no claim of surprise, mistake, or fraud.

We do not find it necessary to consider and dispose of the many separate exceptions and assignments of error relating to the admission of certain testimony and the exclusion of evidence tendered by the plaintiff below, for the reason that such rulings of the court could not, in any event, have controlled the action of the judge in directing a verdict for the defendant. We have very carefully examined the very voluminous record, noting the character of the testimony admitted over the exceptions as well as of that rejected, and, considering the same in connection with the verdict directed, we are forced to the conclusion that, in any event, it would have been the duty of the court to have made the direction it did. That being so, the questions of evidence involved in the exceptions mentioned, while interesting, are not material, in view of the fact that the case is not to be again tried. The only issue before the jury was that raised by the defendant's plea

of the general issue to the plaintiff's declaration.    This court having construed the contract offered in evidence by the plaintiff in the manner set forth in the opinion heretofore filed, it was, we think, in the light of all the testimony before the jury, clearly the duty of the judge to direct a verdict for the defendant.    A verdict in favor of the plaintiff would have been against both the law and the evidence, and would necessarily have been set aside.    Under such circumstances a court should not permit the jury to render a verdict, but should, in order to expedite the due administration of justice, direct such verdict as is plainly indicated, and as will dispose of the controversy at the earliest moment proper, with the least costs to the parties. It was clear to the trial judge—a conclusion in which we fully concur —that, as a matter of law, no recovery could have been had by the plaintiff below upon any view which could properly have been taken of the facts the evidence tended to establish.    Under such circumstances a verdict should be directed.    Pleasants v. Fant, 22 Wall. 116; Insurance Co. v. Doster, 106 U. S. 30, 1 Sup. Ct. 18; Assurance Co. v. Lucker, 42 U. S. App. 111, 23 C. C. A. 139, and 77 Fed. 243; Dunlap v. Railroad Co., 130 U. S. 649, 9 Sup. Ct. 647; Railroad Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905; Elliott v. Railway Co., 150 U. S. 245, 14 Sup. Ct. 85; Railway Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619; Franklin Brass Co. v. Phœnix Assur. Co., 25 U. S. App. 119, 13 C. C. A. 124, and 65 Fed. 773.    So far as this case is concerned, there is no such conflict in the evidence, nor is the credibility of any of the witnesses questioned in such a way as to require the case to be submitted to a jury under the rules established by the decisions relating to such matters.    We find no error in the judgment complained of, and the same is affirmed.

MORRIS, District Judge (dissenting).    I am not able to concur in the opinion that the ruling of the trial court directing a verdict for the defendant was justified.    By the contract sued upon, dated February 9, 1893, the plaintiff contracted to deliver to the defendant 50,000,000 feet of timber below the mouth of certain creeks upon the forks of the Big Sandy river, being a portion of the 42,000 trees then owned or controlled by the plaintiff in that territory, and the defendant agreed to pay the plaintiff $9.50 per 1,000 feet for No. 1 logs and $7 per 1,000 feet for No. 2 logs.    On the former appeal (42 U. S. App. 21, 20 C. C. A. 503, and 74 Fed. 444) this court held that the words in the contract, "said S. F. Chapman further agrees and is hereby obligated to put in ten million feet or more of said timber a year," meant that Chapman was bound to deliver the 10,000,000 feet in every year to the defendant at the final points of delivery at the mouth of Elk Horn creek and the mouth of Dismal creek, the time of delivery being held to be by the end of the June season of each year, during which it is expected that the rise in the creeks will be sufficient to enable the logs to be floated down from the upper forests.    During the seven months from the date of the contract to September, 1893, the plaintiff had cut and hauled to the upper creeks a very large quantity of logs, but in September the plaintiff, claiming that the defendant had broken the contract, and had frustrated the plaintiff in his perform-

ance of it, ceased operations, and at once brought this suit for his damages. When the suit came to trial, the defendant contended that the rise of water in the creeks in the spring and summer of 1894 had proven to be so slight that the logs could not have been floated down, and that, no matter what the defendant had failed to do on its part up to September, 1893, on account of the very slight rise during the next spring and summer, it would have been impossible for the plaintiff to have performed his part of the contract, and to have delivered the 10,000,000 feet of timber for that year at the points of final delivery. On this question of fact there was a conflict of testimony. A number of witnesses testifying for the plaintiff gave evidence of a rise in February, 1894, and that it was sufficient for the plaintiff's purpose if it had been properly availed of. It was upon the insufficiency of this testimony, and because of the consequent failure of the plaintiff in that respect to show that he would have been able to have performed his part of the contract, that the trial court directed a verdict for the defendant. The trial judge said:

"The plaintiff in this, the second, trial of this case, has endeavored to supply the deficiency in the testimony on which the appellate court has said its construction of the contract should have ended the case. The efforts of the plaintiff in this trial to strengthen his testimony in this respect have not been successful. They fall short of showing that the tides of 1893–1894 were such as would have enabled the plaintiff to deliver ten million feet of lumber in that year at the point of delivery designated in the contract. It is not such evidence, giving it all its probative force, as would sustain a verdict for the plaintiff; and, should a verdict be found by the jury, it would be the duty of the court to set it aside, and grant a new trial."

It was conceded at the second trial that the rise in the creeks in 1895, 1896, and 1897 had been in all those years sufficient to have enabled the plaintiff to deliver the logs, and the question was as to the extent of the rise in 1894. It was a question of fact difficult of determination, because, the work having been abandoned, the logs were not actually brought down, except some few which floated off of themselves; but conceding—although to me it is not altogether clear —that the burden of this issue was upon the plaintiff, he produced many witnesses to sustain his contention. This issue of fact was one particularly within the province of the jury, and most proper to be submitted to their determination, if there was testimony to support the plaintiff's contention; and I do not see how it can be said that, if the jury credited the plaintiff's witnesses as to the extent of the rise of 1894, it still was impossible that the plaintiff, with strenuous effort, might not have floated down the logs that he had upon the banks of the creeks. The defendant's witnesses may have disproved this possibility, but, in my judgment, that was a question for the jury.

It would appear that it was on this supposed failure of proof alone that the trial judge felt himself obliged to direct a verdict for defendant; but if it be also argued that there was no proof of any breach of the contract by the defendant, and that the plaintiff abandoned it in his own wrong, and that the ruling of the trial court was right upon that ground, it appears to me that the record contains evidence sufficient to go to the jury tending to show that there was an intentional

failure by the defendant to make the measurements of the logs every 30 days on the pits of the creek banks to which the timber had been hauled from the forests by Chapman.    The contract stipulated that the defendant would make these measurements every 30 days, and would advance on those measurements at the rate of $7 per 1,000 on account of the price agreed to be paid on final delivery for No. 1 logs and $6 per 1,000 on account of No. 2 logs by giving every 60 days 4 months' acceptances.    These settlements were provided in the contract for the benefit of the plaintiff, and were known to the parties to be essential to the plaintiff to enable him to perform his part of the contract, and it appears to me from the record that there was evidence tending to show a deliberate and intentional breach of this important stipulation of the contract by the defendant which the jury should have been allowed to consider.    For these reasons I have been unable to agree with the conclusion that the case was one proper to have been taken from the jury.