GREEN v. INSURANCE CO.

(Filed October 17, 1905).

*Non-residents—Statute of Limitations—Insurance Companies—Cancellation of Policy—Nonsuit—Evidence.*

1. Under section 162 of The Code, the statute of limitations does not run in favor of a non-resident, whether it is an individual or a corporation.

2. The statute, which authorizes service of summons against non-resident insurance companies upon the Commissioner of Insurance, does not abrogate or affect the suspension of the running of the statute in such cases.

3. In an action for the wrongful cancellation of an assessment policy, where the plaintiff, becoming alarmed at the defendant's ceasing to write assessment policies and the increasing annual assessments, ceased to pay, and the defendant cancelled his policy, a judgment of nonsuit was proper where the plaintiff failed to show that his assessments were increased by reason of the defendant's ceasing to write assessment insurance, or that he was discriminated against, and there was nothing in the charter or the policy requiring the defendant to continue writing assessment insurance.

4. Where the plaintiff voluntarily ceased payment and abandoned his policy, he cannot ask damages for its cancellation.

5. In an action for the wrongful cancellation of a policy, the motive or the method of reasoning by which the plaintiff arrived at the conclusion to abandon his policy, was irrelevant.

6. In an action for the wrongful cancellation of a policy, a question whether the plaintiff subsequently took out other insurance in lieu of that which he had abandoned, was properly excluded.

ACTION by T. A. Green against the Hartford Life Insurance Co., heard by *Judge W. R. Allen* and a jury, at the February Term, 1905, of the Superior Court of CRAVEN County. From a judgment of nonsuit, the plaintiff appealed.

*A. D. Ward, M. DeW. Stevenson* and *C. L. Abernethy* for the plaintiff.

*John W. Hinsdale* and *W. W. Clark* for the defendant.

CLARK, C. J.  This is an action for the wrongful cancellation of a policy issued to the plaintiff in 1882 by the defendant upon the assessment plan.  The defendant was incorporated in the State of Connecticut and its charter is set out in the complaint.  It appears therefrom that the defendant was authorized to issue legal reserve insurance policies as well as accident and assessment insurance, and it was provided therein that the charter migh be repealed or amended at the will of the Legislature.  In 1899, the defendant ceased writing assessment policies altogether and restricted itself entirely to old line or legal reserve insurance, leaving the assessment members in a class to themselves, but not sub-dividing them, as in *Strauss v. Insurance Co.*, 126 N. C., 971.  The plaintiff became alarmed at the defendant's ceasing to write policies on the assessment plan and the increasing annual assessments, and in 1901 he ceased to pay his assessments, whereupon the defendant declared his policy forfeited.

The defendant's plea of the statute of limitations—that more than three years had elapsed between the time his policy was declared forfeited and the bringing of this action—cannot avail.  The statute of limitations does not run in favor of a non-resident, whether it is an individual or a corporation. Code, section 162; *Alpha Mills v. Engine Co.*, 116 N. C., 804; *Grist v. Williams*, 111 N. C., 53.  What is said at the conclusion of the opinion in *Williams v. B. & L. Asso.*, 131 N. C., at page 270, is in no wise an intimation that chapter 5, Laws 1901, or chapter 54, section 62 (3), Laws 1899, which authorizes service of summons against non-resident insurance companies upon the Commissioner of Insurance, in any way abrogates or affects the suspension of the running of the statute in such cases.  It merely holds that by reason of

those statutes, summons can hereafter be so readily and promptly served that no question as to the bar from the lapse of time is likely to arise—not that it will be a bar, if presented. That service can thus be had upon a non-resident corporation may be a reason why the General Assembly should amend section 162 of The Code, so as to set the statute running in such cases, but it has not done so and the courts cannot.

But we agree with His Honor below in his granting the judgment of nonsuit. The plaintiff failed to show that his assessments were increased by reason of the defendant's ceasing to write assessment insurance or that he was in any wise injured thereby. The charter of the defendant authorized it to issue the different kinds of policy and there is nothing in the charter or in the plaintiff's policy which required the defendant to continue writing assessment insurance, after the company should think it advisable to discontinue that kind of insurance. The annual premiums in assessment companies necessarily grow larger with the age of the assured and the reluctance of young men to come in to prevent by their premiums the increase of rates, which come to an aging and diminishing class. This is the peculiar weakness of that particular kind of insurance. The plaintiff had no right under its contract or under the defendant's charter to require it to continue to struggle for "new blood," as it is called, to keep down his assessments. His reliance must be upon the "safety fund" created out of the excess of premiums, invested for the purpose of making good the payment of policies, which, in a dwindling class, would otherwise require assessments too heavy to be carried solely by the survivors.

In *Wright v. Insurance Co.,* 193 U. S., 657, the court sustained the validity of a statute which authorized assessment companies to convert themselves into old line or legal reserve companies, but, here, the defendant in its original charter had the right to issue either kind of policy, and there was no

provision requiring it to continue to issue both. In *Polk v. Life Asso.,* 137 Fed. Rep., 273, a company which had been purely assessment, changed to old line insurance against the protest of a dissatisfied member, the company keeping up, as in this case, its separate machinery and system for its assessment members. A bill was filed charging insolvency and that the change in its plan of insurance was a violation of the insurance company's contract of insurance. The court dismissed the bill and said that the insured had "no vested right in a continuance of a plan of insurance which experience might demonstrate would result disastrously to the company and its members." Here all the provisions of the original articles for carrying out the contracts between the assessment members and the company are continued unimpaired. The change of business relates only to future contracts to be made thereafter. The defendant had the charter right to issue both assessment and old line policies, and there is nothing in its contracts with assessment members that it shall continue to do that kind of business when experience may have satisfied the company that it was unsafe. In *Strauss v. Insurance Company, supra,* the contract with the plaintiff provided that "assessments should be made upon the entire membership * * * " and the court held that the company violated this when it arbitrarily divided its assessment members into classes, and arbitrarily increased Strauss's assessment when it continued to assess other members of the same age, in other classes, at much lower rates. In this case, there is no evidence that the defendant arbitrarily increased the plaintiff's assessment or discriminated in the amount as between him and other assessment members. There was no contract that only an assessment business would be done, but the plaintiff knew from the defendant's charter that it was authorized to issue both kinds of policy.

The plaintiff voluntarily ceased payment and abandoned his policy. He cannot now be heard to ask damages for its

cancellation. *Insurance Co. v. Phinney,* 178 U. S., 327; *Ins. Co. v. Sears, Ibid.,* 345; *Ryan v. Ins. Co.,* 96 Fed. Rep., 796.

In every case where damages have been allowed for the cancellation of a policy of insurance, it was alleged and proved that the cancellation was wrongful. *Braswell v. Ins. Co.,* 75 N. C., 8; *Lovick v. Life Asso.,* 110 N. C., 93; *Burrus v. Ins. Co.,* 124 N. C., 9; *Hollowell v. Insurance Co.,* 126 N. C., 398; *Strauss v. Life Asso., Ibid.,* 971; *Simmons v. Life Asso.,* 128 N. C., 469.

The exceptions to evidence are without merit. The plaintiff had already stated that he had ceased to pay because he "saw he could not keep up," and when again asked why he had written the company discontinuing his policy, the court correctly held that the witness might state any facts connected with the matter. His motive, or the method of reasoning by which he arrived at his conclusion to abandon his policy, was irrelevant, as was also the other excluded question, whether the plaintiff subsequently took out other insurance in lieu of this which he had abandoned. The answer, whether it had been "yes" or "no," could have thrown no possible light upon this controversy.

No Error.