**NEW AMSTERDAM CASUALTY CO. et al.
v. FARMERS' CO-OP. UNION OF
LYONS, KAN.**

(Circuit Court of Appeals, Eighth Circuit.
September 17, 1924.)

No. 6593.

1. Trial ⬥141, 143—When verdict should be directed at close of evidence stated.

It is trial court's duty to direct verdict at close of evidence, where evidence is undisputed, or where evidence, though conflicting, is so conclusive that court, in exercise of sound judicial discretion, ought to set aside verdict in opposition to it.

2. Principal and surety ⬥161—Evidence held to show farmers' co-operative association discovered wrongful act of its manager more than five days before notifying surety.

In action on bond to indemnify employer for dishonesty of manager of farmers' co-operative association, evidence *held* to show that association discovered manager's wrongful act in trading in grain futures in plaintiff's name more than five days before it notified surety, in violation of condition of bond.

3. Principal and surety ⬥159—Burden on employer to prove it gave notice to surety on employee's bond within required time.

Burden was on employer to prove that it gave notice of dishonest act of its manager to surety on manager's bond within five days of discovering manager's dishonesty, as required by bond.

4. Appeal and error ⬥173(2)—Claim not presented in trial court cannot be considered on appeal.

Failure to present claim in District Court as to effect of failure to give notice to surety on employee's indemnity bond precludes presentation thereof in Circuit Court of Appeals.

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action by the Farmers' Co-operative Union of Lyons, Kan., against the New Amsterdam Casualty Company and another. Judgment for plaintiff, and defendants bring error. Reversed, and remanded for new trial.

Francis S. Howell, of Omaha, Neb. (Edward P. Smith, William A. Schall, and Frank E. Sheehan, all of Omaha, Neb., on the brief), for plaintiffs in error.

W. W. Stahl, of Lyons, Kan. (Ben S. Jones, of Lyons, Kan., on the brief), for defendant in error.

Before SANBORN and LEWIS, Circuit Judges, and FARIS, District Judge.

SANBORN, Circuit Judge. This writ of error was sued out to reverse a judgment of $5,000 for alleged errors in the trial of an action on a bond issued by the defendant below, whereby it agreed to indemnify the plaintiff to the extent of $5,000 against the loss of any money or other personal property "through the fraud, dishonesty, forgery, theft, embezzlement, misappropriation, or wrongful abstraction of Lon Prose," the general manager of the plaintiff. The Farmers' Co-operative Union of Lyons, Kan., was the plaintiff, and the New Amsterdam Casualty Company of Baltimore, Md., was the defendant. The plaintiff's principal place of business was at Lyons. It was by its articles of incorporation empowered "to purchase and

sell grain, live stock, and other farm products, both for itself and on commission." It owned three elevators, and its business was to buy and sell grain. It bought grain of farmers, put it into its elevators, paid the farmers part of its value, settled with them, and paid them the balance at the price of the grain when the farmer called for the settlement. Its purchases in a season exceeded its storage capacity, and in order to have room it sold wheat which it received before the farmers called for settlements, and bought other wheat to be delivered in the future to protect itself against loss in case the price of wheat advanced. Mr. Prose managed this business, bought and sold, in the name of and for the plaintiff, wheat, corn, and oats from March, 1919, until April 20, 1921, when he ceased his connection with that business.

The plaintiff alleged in its complaint that from August 30, 1920, until May 20, 1921, Prose bought and sold in its name through the Root Grain Company, a member of the Board of Trade of Kansas City, and at Kansas City, grain options, which on the trial proved to be mere contracts to deliver grain to it in the future, and contracts by it to deliver grain to purchasers in the future, and thereby incurred a loss of about $21,000, and that he did this without the knowledge of or notice to the plaintiff. It alleged that it did not ascertain the full amount of its loss by these transactions until July 18, 1921, and that immediately after the discovery of the loss, and within five days thereafter, it notified the defendant and made full proof thereof. By its answer the defendant admitted the execution of the bond and denied the other averments of the complaint. The case was tried by a jury. There was a conflict between the evidence produced by the respective parties. At the close of all the evidence defendant's counsel moved the court to direct the jury to return a verdict in its favor, the court denied the motion, the defendant excepted, and this and other rulings are assigned as errors. The ruling on the motion to direct the jury, however, presents the serious questions in this case.

The court submitted three questions to the jury: First, did the plaintiff, within five days after it discovered any alleged dishonest act of Mr. Prose, notify the defendant thereof? Second, was the plaintiff ignorant of the fact that Mr. Prose was buying and selling wheat futures in its name while he was acting as its general manager? And, third, were such purchases and sales, under the facts of this case, wrongful as against the plaintiff? And the court instructed the jury that, if they did not find an affirmative answer to each one of these questions, they should return a verdict for the defendant.

[1] Counsel for the defendant assert that the evidence was such that the court ought to have instructed the jury to find a negative answer to each of these questions and invoke an examination of this evidence by this court. The rule in the national courts, pursuant to which this examination must be made, is:

It is the duty of the trial court to direct a verdict at the close of the evidence in two classes of cases: (1) That class in which the evidence is undisputed; and (2) that class in which the evidence is conflicting, but is of so conclusive a character that the court, in the exercise of a sound judicial discretion, ought to set aside a verdict in opposition to it. Woodward v. Chicago, M. & St. P. Ry. Co., 145 F. 577, 578, 75 C. C. A. 591; Missouri Pac. Ry. Co. v. Oleson, 213 F. 329, 330, 130 C. C. A. 31; Randall v. Baltimore & Ohio R. Co., 109 U. S. 478, 482, 3 S. Ct. 322, 27 L. Ed. 1003; Southern Pacific Co. v. Pool, 160 U. S. 438, 440, 16 S. Ct. 338, 40 L. Ed. 485; Delaware, etc., Railroad Co. v. Converse, 139 U. S. 469, 472, 11 S. Ct. 569, 35 L. Ed. 213; Union Pacific Ry. Co. v. McDonald, 152 U. S. 262, 283, 14 S. Ct. 619, 38 L. Ed. 434; Patton v. Tex. & Pac. Ry. Co., 179 U. S. 658, 663, 21 S. Ct. 275, 45 L. Ed. 361; Frick v. International Harvester Co., 247 F. 869, 871, 160 C. C. A. 91; Holland et al. v. Director General of Railroads (C. C. A.) 273 F. 929; Waters-Pierce Oil Co. v. Van Elderen, 137 F. 557, 569, 70 C. C. A. 255; Chapman v. Yellow Poplar Lumber Co., 89 F. 903, 905, 32 C. C. A. 402; Canadian Northern Ry. Co. v. Senske, 201 F. 637, 644, 120 C. C. A. 65.

[2] We turn to the examination of the evidence on the first question, the notice of the dishonest act. The bond reads: "Upon the discovery by the employer of any dishonest act on the part of the employee the employer shall, at the earliest practicable moment, and at all events not later than five days after such discovery, give written notice thereof, addressed to the surety at the office of its general agency at Omaha, Nebraska." The acts, which the plaintiff charged in its complaint were dishonest acts of Mr. Prose, were the buying and selling of grain options in the name of the plaintiff through the Root Grain Company on the Board of Trade in Kansas City prior to

April 20, 1921, when he left the plaintiff and its business. The first notice of any claim of such or any dishonest act of Mr. Prose was given to the defendant on May 27, 1921.

[3] The only complaint at the trial was that Mr. Prose, as manager of the plaintiff, bought and sold grain futures in the conduct of the plaintiff's business in its name. The burden was on the plaintiff to prove that it gave notice of the alleged first dishonest act it discovered within five days after such discovery. Mr. Prose testified that at the meeting of the board of the plaintiff in November, 1919, the matter of buying and selling grain futures was discussed, and a motion was made and carried to instruct him to buy corn and oats futures to meet the company's needs, as his judgment dictated. A written certificate of that fact, dated January 17, 1920, signed by Mr. Shepherd, the president of the plaintiff, whose signature was verified on the writing by a notary public and by the testimony of two witnesses, was received in evidence.

Mr. Lawrence, a professional auditor, testified that prior to May 20, 1921, he had been examining the books, records, papers, and accounts of the plaintiff; that he had had the report of Mr. Fouts, another auditor, who had made an earlier examination thereof, and thought he had examined that report; that he had had in his possession Exhibits L to Q, among which are canceled checks of the plaintiff, which aggregate $8,500, each of which bears on its face the written statement that it is on "option acct." and two of them bear the statement "for draft on option acct. of Root Grain Co." These checks bear dates between September 22 and November 28, 1920, and are quite persuasive that dealing in grain futures was not a novel practice of the plaintiff in the earlier months of 1921, when the grain futures from which plaintiff claims its loss were bought and sold. After Mr. Lawrence had made this examination of the books and accounts, he reported on the evening of May 20, 1921, to the plaintiff's board, or to the president and managing members of the board, that the books indicated a loss, and that it might have been through deals that Mr. Prose had been carrying on in speculating on the market in Kansas City. Speaking of the time of this meeting on May 20, 1921, and the checks, Exhibits L to Q, he testified:

"A. We knew they were for options, but we had no confirmation of it.

"Q. You had nothing to dispute it before you? A. We had nothing to confirm it, either.

"Q. You had statements from the Grain Company, showing what you denominate options? A. We had statements from Root Grain Company.

"Q. And you had that on the 20th day of May, when you made your preliminary report? A. Yes."

Mr. Edwards was the secretary of the plaintiff, and in his direct examination he testified for the plaintiff that no information ever came to him as secretary during the spring or early summer of 1921 relative to Mr. Prose's dealings in options until they had an audit, and on cross-examination he testified that Mr. Fouts audited the books prior to May 11, 1921, and reported to a meeting of members of the board on or about that day. Mr. Edwards further testified on direct examination by the plaintiff that he first gained information that Mr. Prose had been operating on the Board of Trade in the name of the company about the 25th day of May, 1921, and on redirect examination as follows:

"Q. One more question: Was there any information of any kind ever came to you in your official capacity or as an individual, either one, by which you could determine positively that Mr. Prose had dealt in options, and, if so, to what extent, before Mr. Lawrence returned from Kansas City, about which we have been talking? A. I had none at all, whatever."

On his cross-examination, counsel for the defendant, holding in his hand what purported to be an official transcript of the testimony in the trial of Farmers' Co-operative Union v. Lon R. Prose, asked him if, on that trial, in answer to the question, "Tell this jury, if you ever knew, when you first knew that Lon R. Prose was dealing in grain futures or options for the corporation of which you are secretary?" he did not testify, "That was when Mr. Fouts audited the books, about May 11, 1921," and Mr. Edwards answered, "I couldn't say for sure whether I did or not." Asked, "Will you say you did not?" he answered, "I won't say one way or the other; I don't remember exactly." Asked if, in answer to the question, "That is the first you knew about it?" he did not testify, "Yes, sir," he answered, "Well, sir, I don't just remember."

Mr. Shepherd, the president of the company, called by the plaintiff, testified that as president of the plaintiff he never received any information as to the fact that Mr. Prose had been dealing in options

through the Root Grain Company until the 25th of May, 1921, when he received it from Mr Lawrence, but that he had had some conversation with Mr. Lawrence about Mr. Prose's conduct on and after May 20, 1921, and that the plaintiff sent Mr. Lawrence to Kansas City to examine the books of the Root Grain Company, and he (Mr. Shepherd) got this information on the 25th of May after Mr. Lawrence's return. On cross-examination, asked, "Where is the audit of Mr. Fouts?" he answered that he did not know. Asked if he saw it, he answered, "The audit of Mr. Fouts, of May 11th, I don't remember whether I ever seen it or not." Asked as an officer of the company to produce that report, he answered, "I haven't the report." Again asked to produce it, he never did produce it. He testified that the board of the plaintiff had a meeting on Saturday night, somewhere from May 9 to 13, 1921, and voted not to accept Mr. Fouts' report, but to demand a rechecking of his audit. Asked, "You knew what it contained? You knew what it contained before you rejected it?" he answered, "Not all of it." He testified that Mr. Prose was present at the meeting of the board on May 11, 1921, when the Fouts audit was rejected, that it was true that under that audit they were given to understand that the company had a net loss of $13,000, that Mr. Prose furnished Mr. Fouts the invoices for making that statement, and that they inquired of Mr. Prose how these losses came, and he said it was from the loads of drop wheat and merchandise he had on hand.

Mr. Lattimer, one of the directors of the company, testified that he first discovered that the plaintiff had a loss on account of dealings in options of Mr. Prose at the stockholders' meeting of May 25, 1921; that he was not present at the meeting of May 11, 1921, but was there that night, and was told about Fouts' report; that it showed a loss of $13,000 and showed transactions with the Root Grain Company.

Mr. Tobias, another director, testified that he first discovered Mr. Prose had dealt in options through the Root Grain Company on May 25, 1921, when Mr. Lawrence came back from Kansas City. But on cross-examination he testified that in the morning of May 11, 1921, before the meeting of the board on that day, a few of the members of the board were called in temporarily, among them Mr. Edwards, the secretary, and Mr. Shepherd, the president, and Mr. Fouts read his report to them. Asked, "And that audit showed, did it not, as it read, that Mr. Prose

had been dealing through this grain company at Kansas City, the Root Grain Company?" he answered, "I wouldn't say for certain as to that." Asked, "You don't say it didn't?" he answered, "No, sir; I wouldn't say it did." He further testified that he did not know where that report was. The testimony of Mr. Tobias that Mr. Fouts read his report to Mr. Shepherd, Mr. Edwards, and himself on the morning of May 11, 1921, was introduced after Mr. Edwards had testified that he did not remember and could not say whether he had testified in a former trial that he first knew that Prose was dealing in grain futures or options was when Mr. Fouts audited the books, about May 11, 1921, and, after Mr. Shepherd had testified that he did not know on the evening of May 11, 1921, after Mr. Fouts' report was read to him in the morning, that the Fouts report showed a loss to the company of $13,000. Neither of them, however, came back to testify that the Fouts report was not read to them on the morning of May 11, 1921.

The relevant evidence on the question whether or not the plaintiff discovered any wrongful act of Mr. Prose more than five days before May 27, 1921, when it gave its notice, has now been recited. The facts that the plaintiff was dealing in options in the fall of 1920 through the Root Grain Company, that Prose left the plaintiff April 20, 1921, that between that time and May 11, 1921, Mr. Fouts examined the books, papers and accounts of the plaintiff and on May 11, 1921, made a report that disclosed a loss of $13,000 and on the morning of that day read that report to the president, the secretary, and one of the directors of the company, the weird and sad disappearance and loss of that report, and the regretful loss of memory of its contents by those to whom it was read, and for whom it was made, the fact that Mr. Lawrence between May 11, 1921, and May 20, 1921, made another examination of the books, accounts, and papers of the plaintiff, and on May 20, 1921, made a preliminary report to the managing members of the board of the plaintiff, the fact that at that time, according to the testimony of Mr. Lawrence, he had the checks, L to Q, knew they were for options, and also had the statements of the Root Grain Company showing dealings in options, converge upon the mind with compelling power, and force it to the conclusion that the officers of the plaintiff, whose knowledge was its knowledge, discovered as early as May 11, 1921, the alleged wrongful acts of Mr. Prose charged in the complaint of the plain-

tiff, and that the evidence to that effect is of so conclusive a character that this court, under the rule stated above, ought not to sustain a judgment based on a finding of the jury to the contrary.

[4] Counsel for the plaintiff, however, now contend that, because there was no provision in the bond that it should be forfeited if notice of the dishonest act was not given within the five days after its discovery, the failure to give it within that time was immaterial, and they cite St. Paul Fire & Marine Ins. Co. v. Owens, 69 Kan. 602, 77 P. 544, and Dixon v. State Mutual Ins. Co., 34 Okl. 624, 126 P. 794, L. R. A, 1915F, 1210. It is not conceded that the rule here invoked is applicable to the action on this bond. If it were, counsel are estopped from taking advantage of it now, because they never presented this claim to the court below, never obtained a ruling upon it by that court, never took any exception to any such ruling, and without these counsel may not invoke the jurisdiction of this court in an action at law to review rulings of the court upon questions never presented and never considered at the trial.

The second question is: Was the plaintiff ignorant of the fact that Mr. Prose was buying and selling wheat futures in its name while he was acting as its general manager in 1921? All the testimony relative to this subject has been carefully read and examined; much of it has already been referred to. It is useless now to recite and review it. Suffice it to say that it leaves so little doubt in our minds that the plaintiff knew, permitted, and practiced the purchase and sale of future contracts, and took the profits therefrom, that, in our opinion, it ought not to be permitted to recover any of its losses therefrom from the defendant, and for that reason, also, we are unwilling to sustain the judgment in this case. As these conclusions necessitate a reversal of the judgment, the discussion of other alleged errors is unnecessary, and is omitted.

Let the judgment of the court below be reversed, and let the case be remanded to the court below for a new trial.