## WOLFBERG v. STATE MUT. LIFE ASSUR. CO. OF WORCESTER, MASS.

Circuit Court of Appeals, Eighth Circuit. November 18, 1929.

No. 8423.

172

Harry L. Jacobs, of Kansas City, Mo. (I.
J. Ringolsky, M. L. Friedman, William G.
Boatright, and Ringolsky, Friedman, Boat-

right & Jacobs, all of Kansas City, Mo., on
the brief), for appellant.

Richard S. Righter, of Kansas City, Mo.
(George J. Mersereau, John H. Lathrop, and
Lathrop, Crane, Reynolds, Sawyer & Mer-
sereau, all of Kansas City, Mo., on the brief),
for appellee.

Before BOOTH, Circuit Judge, and SAN-
BORN and DEWEY, District Judges.

DEWEY, District Judge. The suit is
based on a contract of insurance issued by the
State Mutual Life Assurance Company of
Worcester, Mass., to and on the life of Wil-
liam J. Wolffsky.

The petition is in two counts. The first,
an action at law, seeking to recover damages
for the wrongful cancellation of the policy;
and the second, an action in equity, seeking
to have the policy declared in force at the
time of the death of the insured, and for
judgment thereon.

The suit came to trial on the first count
before a jury, and by agreement of parties
the issues raised by the second count to be
decided by the trial judge upon the evidence
offered in the law action.

The evidence introduced by the plaintiff
establishes that the policy was dated and is-
sued from the home office of the company in
Worcester, Mass., on the 28th day of Febru-
ary, 1922, and insured the life of William J.
Wolffsky for $5,000; the annual premium of
$178.50 to be paid in quarterly installments
in advance.

The first installment was paid March 23,
1922, and quarterly installments were paid
in advance or within the grace period of each
quarter, up to and including the payment due
November 28, 1924.

In December, 1924, while the November
28, 1924, premium was due, but within the
grace period, the insured applied for a loan
on this policy. The same was granted to him
in the sum of $255, with interest at 6 per
cent. per annum payable semiannually on the
15th days of June and December. The loan
was effective from January 8, 1925, and on
or about this date, and from the proceeds
thereof, the insured paid the November, 1924,
premium.

Records of the company show no other
payments, but do show that an effort was
made to collect the premium due February
28, 1925, by a first and second notice and
lapse notice, and telephone calls from the
Kansas City office of the company, in which
city Mr. Wolffsky resided.

On April 1, 1925, this office wrote the in-
sured a letter addressed to his Kansas City,

Mo., home address, advising him of the default in payment of the premium due February 28, 1925, and offering to reinstate him within a period of 30 days after such lapse if he could establish his insurability by a health certificate. No response having been received, the home office was advised on April 28, 1925, that the policy had lapsed for failure to pay the premium when due.

The policy contract provided for 31 days of grace, and the practice of the company was to allow the agent to collect the premium 30 days beyond that time if a health statement was signed by the insured, and upon the insured's failure to so do, the records were sent to the home office of the company for final disposition.

The record in this case of the lapse of the policy for failure to pay the premium due February 28, 1925, came to the attention of the officers of the home office of the company on May 4, 1925, which was a normal period for such records to be sent to the home office and for them to act thereon.

The actuary of the company in May, 1925, figured:

| | |
|---|---|
| The cash surrender value of the policy as of February 28, 1925, as.......................... | $263 50 |
| Loan ..................................... $255 00 | |
| Int. from 1/9/25 (81 days).............. 3 40 | |
| | $258 40 |
| | $ 5 10 |

And he certified that this provided extended insurance of $4,742 for 34 days from February 28, 1925, up to and including April 4, 1925.

The insured committed suicide August 11, 1925.

At the time of the execution of the policy, the insured elected that in the event of a default in the payment of a premium when due after two years' premiums had been paid, he should have the insurance continued in force as extended insurance from the anniversary last past, for its face amount, less any indebtedness to the company thereon or secured thereby.

The policy provided, among other things, that: "The term for which this policy will be continued as Extended Insurance or the amount of Paid-up Insurance, as given in the accompanying table, is such as the Cash Value will purchase as a net single premium at the attained age of the insured, according to the American Experience Table of Mortality, with interest at three per cent. per annum, but no provision contained herein shall operate to continue this policy in force beyond the term for which it was originally written."

The accompanying table provided, among other things, that the cash surrender or loan value, where the premium had been paid for three full years, was $244.75. This had been increased by the board of directors to $263.50.

Also, as a part of the policy, and following the above table, the policy provided: "The above values are computed * * * upon the assumption that the premiums required by this policy (less current dividends) have been paid in full and that there is no indebtedness to the company on account of this policy."

The policy further provides: "The said values will be increased if there are any outstanding paid-up additions to this policy and diminished if there be any indebtedness hereunder."

The yearly dividends were paid in cash to the insured, and there were no dividends due him at the time the accounting was had at the home office.

In the policy loan certificate above referred to is the following provision:

"If any premium on said policy remains unpaid at the end of the grace period, said company is hereby authorized to deduct from the cash surrender value of said policy at the date of default the total indebtedness represented by this and any other certificate or certificates of indebtedness then outstanding against said policy, including interest to the date of said default, and to apply the balance as a net single premium to the purchase of paid-up insurance payable at the same time and on the same conditions as in the original contract, or, if such has been provided by the policy contract, extended term insurance in the amount of the face of the policy including additions (if any) and less the total indebtedness.

"Upon the allowance by the said company of paid-up insurance or of extended insurance free from indebtedness, as provided herein, this certificate and all other certificates, if any, outstanding against said policy shall be cancelled, become void and will be returned to the insured upon the return of the policy to the company for proper endorsement."

Plaintiff's evidence therefore establishes that the insured, after borrowing a sum practically equal to the cash surrender value of the policy, permitted the same to lapse; that the company sent notices to the insured at all stages of the proceedings, and not hearing from him, the account was sent to the home office, an accounting made by the actuary of the company according to the terms of the policy, and the balance of $5.10 applied

for the payment of extended insurance as directed by the insured for 34 days from February '28, to April 4, 1925.

Plaintiff's cause of action in both counts is based on deceit; the grounds therefor, as alleged, being that the defendant fraudulently refrained from notifying insured of his rights under the contract of insurance, and made false and fraudulent statements in its notices to the insured. Also that the defendant did not follow the laws of Missouri in computing the amount available after default; and that had it followed the provisions of such law the balance would have been sufficient to purchase temporary insurance for the face of the policy to the date of the death of the insured. A claim is also alleged that the insured did in fact pay the premium due February 28, 1925.

No claim is made on this appeal that there is any evidence to support the charge that notices were not sent the insured, and the record establishes that proper and sufficient notices were sent to him. The evidence also establishes that the amounts available to insured to pay for extended insurance as computed by the evidence were larger than they would have been had the provisions of the Missouri law relied upon by the plaintiff been followed.

Upon this record the trial court directed a verdict for the defendant and dismissed the equity bill on its merits. The defendant in its answer alleged that the policy had been lapsed by the failure of the insured to pay premiums in accordance with the terms of the policy, and appellant now seeks to reverse the rulings of the trial court, basing her assignments of error that there was evidence tending to establish a wrongful cancellation and repudiation of the policy, on claims set up in her reply. These assignments of error cover ten pages of appellant's printed brief, and are in substance:

1. That there was substantial evidence tending to prove that the premium due February 28, 1925, was paid by the insured.

2. That the loan was never deducted in the time or in the manner contemplated in the loan certificate, in this: (a) That the company had an option either to deduct the debt or apply the entire cash surrender value to purchase extended insurance, and that it did elect not to deduct the indebtedness, and hence waived the right to claim that it did not apply the entire cash surrender value to purchase extended insurance. (b) That interest was charged on the amount of the loan certificate to the end of the grace period, March 31, 1925, instead of the date of default, February 28, 1925. (c) That the loan certificate was never canceled, as it was not returned to the insured as provided by the terms of the policy. (d) That the extended insurance purchased by the balance due insured after deducting the loan, commenced at the end of the grace period instead of from the anniversary date.

3. That the policy was not in force until March 23, 1922, the date of its delivery, and subsequent premium payments continued it in force until March 23, 1925, and its cancellation by the company as of February 28, 1925, was therefore wrongful and entitles plaintiff to a judgment and decree in her favor.

■ The evidence relied upon as tending to show that the premium due February 28, 1925, was in fact paid, is the testimony of the wife of the insured that she and her husband called at the office of the company in Kansas City the first week of March, 1925; that Mr. Wolffsky went up to a lady there in the office and handed her something, and that she handed him something back; that in the meantime Mr. Sharles, an officer of the company, came out and they went into his office.

One other incident relied upon was the testimony of one of the officers of the company that the receipt for the premium due on February 28, 1925, after being prepared at the home office, was sent to the Kansas City office and returned to the home office about two months after the date of the claimed default, and after being kept about a year, was destroyed. He further testified, however, that it was the custom to destroy these receipts after they were kept by the company for a year.

We are unable to see wherein either of these incidents furnish any evidence that the premium due February 28, 1925, was paid, or any evidence to be submitted to the jury on that question. Especially is this true in the light of the evidence introduced by the plaintiff, herself, that this premium was not paid.

■ As stated in the case of Dorroh v. Wall (Mo. App.) 297 S. W. 705: "While payment may be established from facts and circumstances from which the inference of payment may be drawn, to authorize such an inference the facts and circumstances should 'all point one way * * * and be inconsistent with any other reasonable hypothesis than that payment was made.'"

■ As to the second assignment of error, appellant in her brief says: "Our contentions with respect to the handling of the insured's policy may be succinctly stated as follows: Defendant was given an option or au-

thorization, by the policy, to deduct its debt plus interest from the cash value. This was merely an option or privilege. The deduction was not automatic, not being obligatory. It, therefore, required an election on the part of the defendant to deduct the debt from the cash value. Inasmuch as the allocation of the cash value to the purchase of extended insurance was automatic and the deduction of the note debt was not automatic, then so long as nothing was done, there was no deduction and extended insurance was in force, purchased automatically by the cash value."

We think counsel is mistaken in saying that defendant was given an option by the policy to deduct the debt. The agreement whereby the company was given authority to so deduct is contained only in the loan certificate. The policy reiterates that the indebtedness to the company must first be deducted in figuring the cash surrender value of the policy.

The Missouri law relied upon by the plaintiff also is mandatory in this regard. Section 6151 of the Revised Statutes of Missouri, 1919, provides, among other things, that: "The net value of the policy, when the premium becomes due, and is not paid, shall be computed upon the actuaries' or combined experience table of mortality, with four per cent. interest per annum, and after deducting from three-fourths of such net value, any notes given on account of past premium payments on said policy issued to the insured, and any evidence of indebtedness to the company, which notes and indebtedness shall be then canceled, the balance shall be taken as a net single premium for temporary insurance for the full amount written in the policy."

Under the terms of the policy and the Missouri law, the company was required to deduct the loan. The statement in the loan certificate that it had authority to do this must be considered with the provisions of the policy and the law.

■ The loan certificate may not have been returned after cancellation as provided by the terms of the policy, but that return was conditioned upon the insured's surrendering the policy to the company which was never done by him.

■ One of the officers of the company stamped on the "lapse report" the words, "Do not write." Appellant claims on this an indication of wrongful intent or purpose. This stamp, however, was placed thereon to indicate the fact that according to the policy contract the insured had no rights therein whereby he could have his policy reinstated.

■ Several reasons can be given why the remaining assignments of error are without merit. As far as the third assignment above referred to is concerned, no issue of this kind was raised by the pleadings or in the lower court, and hence cannot be here considered. New Amsterdam Casualty Co. et al. v. Farmers' Co-op. Union (C. C. A.) 2 F.(2d) 214; Elkan v. Sebastian et al. (C. C. A.) 291 F. 532, 535.

■ Another answer to these assigned errors is that there is no evidence of any injury or damage to insured from any error made by the defendant, if any, in its computation of the amount of the balance available for extended insurance, or because of any error in the dates as to when the policy lapsed or from any notice thereof given to the insured.

■ Appellant relies in her claim for damages upon a wrongful cancellation or repudiation of the policy. But the cancellation was not wrongful, nor was the policy repudiated. The insured voluntarily ceased payment and abandoned his policy. He cannot now be heard to ask damages for its cancellation. Green v. Hartford Life Ins. Co., 139 N. C. 309, 51 S. E. 887; 1 L. R. A. (N. S.) 623, 4 Ann. Cas. 360; Mutual Life Ins. Co. v. Phinney, 178 U. S. 327, 20 S. Ct. 906, 44 L. Ed. 1088; Ryan v. Mutual Reserve Fund Life Ass'n (C. C.) 96 F. 796.

■ Both the insured and the insurance company had a written contract before them and were presumed as a matter of law to know its legal effect and operation. Sturm v. Boker, 150 U. S. 312, 336, 14 S. Ct. 99, 37 L. Ed. 1093.

If there were any errors in computation, they did not result in any damage to insured. No evidence is offered of any attempt or effort on the part of the insured to keep the policy alive, or to show that he was misled to his injury by any act on the part of the company. The mistakes, if any, relied upon, were in the computations after cancellation. It could make no difference to appellant whether the insurance lapsed on March 25, 1925, or on April 24, 1925. Insured never offered or tendered any premium before the expiration of any claimed due date or within the period of grace following any such claimed due date. No consideration in the way of a payment is shown that would keep the insurance alive and make it effective to August 11, 1925. The insurance policy provided that in case of failure to pay any premium when due, or within the grace period, it should lapse and become void.

We have given more consideration to the claims of the plaintiff than they deserve. The

record shows that the insured deliberately borrowed all the money that the policy was worth, evidently intending to allow it to lapse. The company after using all reasonable means was unable to persuade him to continue the payment of premiums or reinstate the policy.

We have carefully examined the several claims of the plaintiff and find no error in the record. And the actions of the court in directing the verdict for the defendant, and his refusal on the second count to set aside the cancellation of the policy and restore it in full force and effect as of the date of the death of the insured, should be, and the same are, affirmed.