NEW YORK CENT. & H. R. R. CO. v. DIFENDAFFER.[*]

(Circuit Court of Appeals, Seventh Circuit. October 6, 1903.)

No. 958.

1. TRIAL—QUESTIONS FOR COURT—EVIDENCE TO AUTHORIZE SUBMISSION TO JURY.
   The rule in the federal courts is that it is not proper to submit a cause to the jury merely because some evidence has been introduced, unless that evidence be of such character that it would warrant the jury in finding a verdict in favor of the party introducing it.

2. CONTRACTS—GROUNDS FOR AVOIDANCE—FAILURE TO READ.
   The mere fact that a person on entering the employment of the Pullman Company as porter on one of its sleeping cars failed to read the contract which he was required to sign, and which contained a provision that he assumed all risk of injury from railroad travel while engaged in such employment, does not afford ground for his avoidance of such provision, in the absence of any evidence of fraud or misrepresentation.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

This is a writ of error sued out by the plaintiff in error (defendant below) to reverse a judgment in favor of the defendant in error for personal injuries sustained by him by reason of a collision occurring on the line of railway of the plaintiff in error at East Buffalo, in the state of New York. The plaintiff below was a porter in a sleeper, and in the service of the Pullman Company. The collision occurred by reason of an open switch, a freight or switch engine leaving the track and plunging into the sleeper in which the plaintiff below was riding.

To the declaration the defendant below filed a plea of the general issue, with two special pleas, setting forth the contract between the defendant in error and the Pullman Company, dated July 21, 1900, being the date upon which Difendaffer entered into the service of that company. This contract is entitled, "Contract of Employment," and, so far as is material to the case in hand, is as follows:

"Be It Known, That I the undersigned hereby accept employment by and enter into the service of The Pullman Company upon the following express

* Rehearing denied November 18, 1903.
¶ 2. See Master and Servant, vol. 34, Cent. Dig. § 169.

terms, conditions and agreements, which in consideration of such employment and the wages thereof, I do hereby make with said The Pullman Company, to-wit:

\* \* \* \* \* \* \* \* \* \*

"Fourth: I assume all risks of accidents or casualties by railway travel or otherwise, incident to such employment and service, and hereby, for myself, my heirs, executors, administrators or legal representatives, forever release, acquit and discharge The Pullman Company and its officers and employés, from any and all claims for liability of any nature or character whatsoever, on account of any personal injury or death to me in such employment or service.

"Fifth: I am aware that said The Pullman Company secures the operation of its cars upon lines of railroad, and hence my opportunity for employment, by means of contracts wherein said The Pullman Company agrees to indemnify the corporations or persons owning or controlling such lines of railroad against liability on their part to the employés of said The Pullman Company in cases provided for in such contracts, and I do hereby ratify all such contracts made or to be made by said The Pullman Company and do agree to protect, indemnify and hold harmless said The Pullman Company with respect to any and all sums of money it may be compelled to pay or liability it may be subject to under any such contract, in consequence of any injury or death happening to me, and this agreement may be assigned to any such corporation or person and used in its defense.

\* \* \* \* \* \* \* \* \* \*

"I have read and understand every word of this paper.

"Joshua Difendaffer. [Seal.]

"Signed, sealed and delivered in the presence of

"E. H. Schall."

To the special pleas the plaintiff below replied "that, at the time of the execution of the said contract mentioned in said second plea, the said Pullman Company, through its agents and servants, with intent to deceive and deprive the plaintiff of his legal rights, falsely and fraudulently represented to him (the plaintiff) that said contract was a document or paper relating simply to the routine business connected with the plaintiff's duties as porter in the employ of the said Pullman Company, and was a paper of no significance other than the mere registration and facts connected with the trip as porter about to be made by the plaintiff for the Pullman Company, and that said contract did not in any way tend to deprive the plaintiff of his rights to recover in case he suffered injury through the negligence of the said Pullman Company, or of any one or more of the various railroad lines over which its sleeping cars were run; and that thereupon, being deceived and misled by the statements and representations of the said Pullman Company's agents and servants, this plaintiff then and there signed his name to the said contract or document, and that at the time the same was not read by the plaintiff, and was not read by any one to the plaintiff, and this plaintiff had no idea that the provisions of the said document were of the nature now claimed to be by the defendant, until after he had suffered the injuries set forth in his declaration and had brought suit to recover therefor, and that no consideration moved from the said Pullman Company or from the New York Central & Hudson River Railroad Company, or from any one for either, to this plaintiff, and that said signature of the plaintiff to the said document was obtained through fraud and misrepresentations. And this the plaintiff is ready to verify."

There was rejoinder to the replication, denying the allegations of the replication. At the trial the facts of the collision and the resulting injury were not seriously disputed, the case turning upon the contract introduced in evidence by the defendant below. There were but two witnesses testifying upon the subject—the plaintiff in his own behalf, and Schall, the subscribing witness. The plaintiff testified, with respect to the contract, that the signature thereto was his, but he did not know when he signed it, whether it was on the day he went to work for the company or after that, or whether it was before he went to work for the company. He also said he never signed any paper before he went to work; that he signed papers every

trip in and every trip out, and signed whatever was put before him to be signed. At another stage of his testimony he said that he handed in his application for employment, and the president of the Pullman Company said to him, " 'Go to work.' * * · * I do not know how long after that it was when I signed this. It was just the first thing"; that the paper was not read to him, nor was he told what it was. Mr. Schall, the chief clerk in the district office of the Pullman Company, testified that he remembered signing the paper as a witness; that the paper was given the plaintiff below right after he had filled out his application for employment; that the witness asked Difendaffer to read it carefully, and if he did not understand any parts of it to come back and it would be explained to him, and asked him to sign the document in the presence of the witness; that Difendaffer took the paper, went into the outer office, and remained about half an hour; that he does not know whether Difendaffer read the paper or not. He returned, and the witness asked Difendaffer if he understood the paper. He said that he did, and he then signed his name, and Schall signed it in his presence as a witness, and thereupon he went into the service of the company.

At the conclusion of the evidence, the defendant below requested of the court a peremptory charge to the jury to return a verdict for the defendant, which motion was denied, and to which due exception was taken.

Francis B. Daniels, for plaintiff in error.

Cyrus J. Wood, for defendant in error.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge (after stating the facts as above). The court correctly charged the jury that the burden of proving fraud rests upon the party asserting it; that fraud must be proven by clear evidence; that if the contract in question was executed without fraud or misrepresentation on the part of the Pullman Company, that contract constitutes a valid defense to the action; that mere failure on the part of the plaintiff to read the contract which he signed would not amount to fraud on the part of the Pullman Company, if the plaintiff at the time had opportunity given to him to read and his failure to read was his own negligence.

In Baltimore & Ohio Southwestern Railway Company v. Voigt, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560, it is ruled, in a somewhat similar case, that one occupying a like position to that of the defendant in error here, and under a like contract, was not a passenger, and that such a contract did not contravene public policy, and exonerated the railroad company from liability, if the contract was entered into freely and voluntarily and without fraud. So that the question here is whether there was evidence proper to be submitted to the jury to sustain the plea of fraud in the execution of the contract in question. The rule in the federal courts is "that, before the evidence is left to the jury, there is or may be in every case a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed"; and that it is not proper to submit the cause to the jury merely because some evidence has been introduced, unless that evidence be of such a character that it would warrant the jury to proceed in finding a verdict in favor of the party introducing such evidence. Commissioners of Marion County v. Clark, 94 U. S. 278, 24 L. Ed. 59.

We are of opinion, considering alone the testimony of the plaintiff below, that there is absolutely no evidence of fraud upon which the cause should have been submitted to the jury. There was no representation, true or false, made to him with respect to the contents of the paper. Giving to his testimony the fullest effect to which it is entitled, the case is simply that of one who could read, but did not read, the paper before he signed it. Assuming that he was an illiterate man and unable to comprehend from the language employed the nature of the contract which he was requested to sign, he neither asked the officers of the company for an explanation, nor did he seek the advice of any other person. It is merely the case of one executing a contract without reading it; and in such case, where no imposition has been practiced upon him, the omission to read is no defense to the contract. The plaintiff below was in health and vigor. He was not prevented from reading it, and there was no misrepresentation to him of the nature of the document. He deliberately elected to sign and did sign the document without reading it. Under such circumstances the contract is binding.

Chief Justice Gibson, with his usual clearness and terseness, in Greenfield's Estate, 14 Pa. 496, states the rule thus:

"If a party who can read will not read a deed put before him for execution, or if, being unable to read, will not demand to have it read or explained to him, he is guilty of supine negligence, which, I take it, is not the subject of protection, either in equity or at law."

The rule has been abundantly sustained by the courts. Thus, in Upton, Assignee, v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203, the court says:

"It will not do for a man to enter into a contract and, when called upon to respond to his obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they were written; but such is not the law. The contractor must stand by the words of his contract, and, if he will not read what he signs, he alone is responsible for his omission."

And in Andrus v. St. Louis Smelting & Refining Company, 130 U. S. 643, 9 Sup. Ct. 645, 32 L. Ed. 1054, it is said:

"The law does not afford relief to one who suffers by not using the ordinary means of information, whether his neglect be attributable to indifference or credulity."

See, also, Chicago, St. P., M. & O. Ry. Co. v. Belliwith, 28 C. C. A. 358, 83 Fed. 437; Chicago & N. W. Ry. Co. v. Wilcox, 54 C. C. A. 147, 116 Fed. 913; Insurance Co. v. Hodgkins, 66 Me. 109; Pennsylvania Railroad Co. v. Shay, 82 Pa. 198; Keller et al. v. Orr, 106 Ind. 406, 7 N. E. 195; Albrecht v. Milwaukee & Superior Railroad Company, 87 Wis. 105, 58 N. W. 72, 41 Am. St. Rep. 30. In the latter case, the party seeking to avoid his contract was a German. He did not read the paper he signed, and said he could not read it, and did not know whether it was read to him or not, and did not know the contents of it; and the court said that it cannot be tolerated that a man shall execute a written instrument and, when called upon to abide by its terms, say merely that he did not read it, or did not know what it contained. It is needless to pursue

the subject. The rule has been established time out of mind. I Shep. Touch. 56 (30 Law Lib. 121). The plea of fraud was not sustained by any evidence whatever. The plaintiff below was a free man, with liberty to contract or not, as he saw fit. It was his duty to read and to understand the contract of employment which the Pullman Company required. He does not pretend that there was any misrepresentation to him, or, in fact, any representation whatever of the contents of the instrument. He deliberately elected to sign the document without reading or understanding it, and he must take the consequence of his own negligence. The paper signed is the highest evidence of the agreement of the parties. Except in case of fraud or mistake, it speaks conclusively the contract which the parties have made, and it may not be impugned by one party, where the other party has acted upon it, upon the ground that he misunderstood it, or that he refrained from reading it, or that he neglected to have the document explained to him. Where fraud or imposition or misrepresentation has intervened, the party is not bound; but, in their absence, failure to read or have it explained will not avail to annul the deliberate writing of the party.

The judgment is reversed, and the cause is remanded with a direction to the court below to award a new trial.