RILEY v. LOUISVILLE & N. R. CO.

(Circuit Court of Appeals, Sixth Circuit. December 14, 1904.)

No. 1,289.

1. FEDERAL COURTS—TRIAL—DIRECTION OF VERDICT.
    Where, in an action for injuries to a switchman, the evidence, though conflicting, was so conclusive in support of defendant's claim that it would have been the duty of the trial judge to have set aside a verdict to the contrary, it was his duty to direct a verdict for defendant.

¶ 1. See Trial, vol. 46, Cent. Dig. § 383.

**2. SAME—RAILROADS—UNFILLED SPACES—NEGLIGENCE—EVIDENCE.**

In an action for injuries to a switchman by his catching his foot in an excavation under a spring rail frog, evidence *held* insufficient to establish defendant's negligence in maintaining such excavation.

**3. SAME—ASSUMED RISK.**

Where defendant railroad company maintained from 25 to 30 spring rail frogs, with necessary excavations under the spring rails, in the yards in which plaintiff had been working as a switchman for some six months prior to his injury by having his foot caught in one of such excavations, it was his duty to take notice thereof, and he therefore assumed the risk of the danger incident thereto.

In Error to the Circuit Court of the United States for the Middle District of Tennessee.

W. H. Washington, for plaintiff in error.

Percy D. Maddin and John W. Judd (Charles N. Burch and J. B. Keetle, of counsel), for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This suit was brought by W. C. Riley, plaintiff in error, against the Louisville & Nashville Railroad Company, to recover damages for injuries sustained by him while at work, on the night of September 25, 1898, in the yards of the company in East Nashville, Tenn., as an extra switchman. The accident occurred while Riley, carrying a lantern, was walking ahead of a moving car for the purpose of changing a link. At the point where there was a frog, while so engaged, Riley's foot was caught and held in a hole or excavation existing under the rail of the frog, so that the moving car ran upon him and crushed his foot.

Riley's claims, set out in his two causes of action, were, first, that the hole was a defect in the roadbed, of which he had no knowledge, and for the results of which the company, having failed to provide him a reasonably safe place in which to work, was responsible; and, second, that he was a green hand, unfamiliar with the locality, unaware of the hole, which was dangerous to one engaged in switching cars there, and that the company, having failed to warn him of its existence, was liable. The defense of the company was that the hole complained of was not a defect in the roadbed, negligently permitted to exist, but an excavation purposely made and maintained under the movable rail of the spring frog, and that the plaintiff, who was not a green hand, knew or should have known of its existence, for it was plainly observable, and his duties required him to work over it, so that, if the excavation was dangerous, the risk incident to working over it was one he assumed.

At the conclusion of the testimony, the court directed a verdict for the defendant. This action is assigned as error.

There are no disputed questions of law. The questions are those of fact—of the probative force of the evidence. The court below took the view that the testimony in support of the company's claim was so conclusive that if the case had gone to the jury, and a verdict been returned for the plaintiff, it would have been his duty, in the exercise

¶ 3. Assumption of risks incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.

of a sound judicial discretion, to set it aside. Holding this opinion, he could not do otherwise than direct a verdict for the defendant. Patton v. Texas, etc., Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361. The question for us to determine is whether the court was correct in the view taken. The plaintiff in error insists there was such a conflict in the testimony that the case should have been submitted to the jury.

The testimony of the company tended to show that the excavation into which Riley stepped was one under the rails of a spring rail frog. A spring rail frog is one with a movable rail, which is forced out by the flange of the running wheel, and, when it has passed, is pushed back in place by the spring of the frog. If the spring rail fails to return to its proper place, the next car passing over it is liable to be derailed. For this reason, it is necessary to guard against obstructions to the free movement of the spring rail. Accordingly an excavation is made between the ties under the frog, where the spring rail is movable, so that coal, sand, or other possible obstructions falling between the rails of the frog may not lodge there, but pass through. Such excavation is trough-like in shape, running back from the point of the frog 8 or 10 feet, and extending outside the rail 8 or 10 inches, and is plainly observable. A trackman keeps this excavation cleaned out. There were 25 or 30 of these spring rail frogs in the Nashville yards, where Riley worked. Riley was 24 years old when hurt. He had been working in the Nashville yards for 5 or 6 months as extra switchman. He was intelligent and skillful. Although he worked at night, his employment covered the summer, and there were several hours of daylight each day in which to observe the condition of the track and frogs where he worked. The defendant's witnesses who testified to the above facts were 10 in number—the roadmaster, the yardmaster, the trackman who kept the excavation cleaned out, the members of the crew who worked with Riley, and other switchmen, who were acquainted with the frogs and their mode of operation. They all testified that the excavation was proper, necessary, and obvious. On the other hand, the plaintiff introduced five witnesses. Two of these were acquainted with spring rail frogs, and admitted they had to be cleaned out underneath to keep them in working order. Another had had no experience with spring rail frogs. This left one witness (aside from the plaintiff) who insisted that the track should have been ballasted to the top of the ties where there were spring rail frogs, as well as elsewhere. This evidence of the plaintiff and his one witness was too slight, in the face of the overwhelming evidence to the contrary, to sustain a verdict if the case had gone to the jury.

In Randall v. B. & O. R. Co., 109 U. S. 478, 3 Sup. Ct. 322, 27 L. Ed. 1003, the plaintiff sought to establish that a certain ground switch was an improper and dangerous structure, and one witness so testified. The lower court directed a verdict for the defendant. Referring to the action of the court below, in view of the evidence offered, Mr. Justice Gray, speaking for the Supreme Court, said (page 482, 109 U. S., page 324, 3 Sup. Ct., 27 L. Ed. 1003):

"It is the settled law of this court, that when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is in-

sufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant. Tried by this test, there was no sufficient evidence of any negligence on the part of the railroad company in the construction and arrangement of the switch to warrant a verdict for the plaintiff on that ground. The testimony of the plaintiff and of his witness was too slight. A railroad yard, where trains are made up, necessarily has a great number of tracks and switches close to one another, and any one who enters the service of a railroad corporation, in any work connected with the making up or moving of trains, assumes the risks of that condition of things. Although it was night, and the plaintiff had not been in this yard before, his lantern afforded the means of perceiving the arrangement of the switch and the position of the adjacent tracks. The switch was of a form in common use, and was, to say the least, quite as fit for its place and purpose as an upright switch would have been."

See, also, Southern Ry. Co. v. Rhodes, 86 Fed. 422, 426, 30 C. C. A. 157.

We are satisfied from an examination of the evidence that the facts as to the excavation were as claimed by the defendant. The spring rail frog where Riley was hurt was a reasonable appliance. The excavation under it was necessary for its proper operation. Such excavation was obvious. Any one giving heed could observe it. Riley's wor : was in the yards. There were 25 or 30 of these frogs there. It was his duty to know their location, construction, and mode of operation. He had been at work there some six months. It must be assumed he knew of these excavations. If there was danger in working about them, he assumed the risk. The testimony conclusively negatives any right to recover on his part against the railroad company. Randall v. B. & O. R. Co., 109 U. S. 483, 3 Sup. Ct. 322, 27 L. Ed. 1003; Tuttle v. Detroit Ry. Co., 122 U. S. 195, 7 Sup. Ct. 1166, 30 L. Ed. 1114; Kohn v. McNulta, 147 U. S. 238, 13 Sup. Ct. 298, 37 L. Ed. 150; Southern Pacific Ry. Co. v. Seley, 152 U. S. 145, 14 Sup. Ct. 530, 38 L. Ed. 391; Texas & Pacific R. Co. v. Archibald, 170 U. S. 665, 673, 18 Sup. Ct. 777, 42 L. Ed. 1188; Choctaw, Oklahoma, etc., Ry. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96; Narramore v. C., C., C. & St. L. R. Co., 37 C. C. A. 499, 96 Fed. 298, 48 L. R. A. 68; Lindsay v. N. Y., etc., R. Co., 50 C. C. A. 299, 112 Fed. 384; Kenney v. Meddaugh, 55 C. C. A. 115, 118 Fed. 209.

The judgment of the court below is affirmed.