WOODWARD et al. v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. April 25, 1906.)

No. 2,307.

**1. TRIAL—VERDICT SHOULD BE DIRECTED WHEN ONLY ONE SUSTAINABLE.**

It is the duty of the trial court to direct a verdict at the close of a trial before a jury in two classes of cases: (1) That class in which there is no conflict in the evidence; and (2) that class in which the evidence is conflicting, but is of so conclusive a character that the court in the exercise of a sound judicial discretion would set aside a verdict in opposition to it.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, §§ 376–395.]

**2. RAILROADS—FIRES—STATUTORY PRESUMPTION FROM SETTING BY RAILROADS IN MINNESOTA REBUTTABLE.**

The presumption of negligence or of defects in machinery from scattering fire, raised by section 2700, Gen. St. Minn. 1894, was created to change the burden of proof. When this has been done, and the evidence has been adduced, it is functus officio, and it cannot be used to raise an issue which the evidence does not present.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, §§ 1710–1712.

Presumption of negligence from railroad fires, see note to McCullen v. Chicago & N. W. Ry. Co., 41 C. C. A. 370.]

**3. SAME—COURT SHOULD DIRECT VERDICT AS IN OTHER CASES.**

If the proper employés of the railway company have testified to the effect that there were no defects in the locomotive, or that reasonable care had been used to avoid them, and that the locomotive was operated with ordinary care and skill, and the evidence at the close of the trial is so conclusive that an opposite finding is not sustainable, the statutory presumption of negligence is overcome as a matter of law, and it is the duty of the trial court to instruct the jury in a fire case from Minnesota, as in other cases, to return a verdict for the defendant.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, § 1711.]

**4. SAME—NEGLIGENCE—CUSTOMARY SPEED OF PASSENGER TRAIN ON DRY AND WINDY DAYS IS NOT.**

A railway company owes to the owners of isolated buildings near its tracks no duty to stop or to diminish the customary speed of its regular passenger trains as they pass them on dry and windy days, in the absence of fires previously set or other evidence of the danger of setting a fire.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, § 1672.]

**5. EVIDENCE—TESTIMONY THAT ACT WAS NOT DONE BASED ON ABSENCE OF RECORD AND THE RECORD ITSELF ADMISSIBLE.**

In the absence of memory, one who knows that, if an act had been done by him or by his department, it would have been recorded upon a book or paper which he had at the time and which he identifies, may testify that he knows it was not done, from the absence from the record of any note of it, although this fact does not refresh his memory, and the record and this testimony are competent evidence of the fact that the act was not performed.

**6. RAILROADS—FIRES—CONDITION OF LOCOMOTIVE DURING PRECEDING MONTH NOT TOO REMOTE.**

Testimony of the condition of the devices upon a locomotive for arresting sparks and preventing the escape of fire at various times within a month preceding the setting of the fire in controversy is not too remote.

**7. SAME—EVIDENCE OF REQUIREMENT AND CUSTOM OF INSPECTION COMPETENT.**

Testimony that for a number of years the railway company had required the firemen of its passenger trains, and that it had been their custom, to

145 F.—37

inspect the dampers, ashpans and dump grates of their locomotives before they started on their trips to see that they were clean and in good order, and that the company had required both firemen and engineers to report what, if anything, was needed, is competent upon the issue of the negligence of the company.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Minnesota.

See 122 Fed. 66.

P. J. McLaughlin (F. W. Gail and William D. Mitchell, on the brief), for plaintiffs in error.

F. W. Root, for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. This is an action against the railway company for damages for alleged negligence in the operation of one of its locomotives whereby the farm buildings of the plaintiff Woodward were burned. The main line of the defendant's railroad between Minneapolis and Chicago ran within 150 feet of Woodward's buildings. Between the railroad and the buildings there was a traveled highway. On the afternoon of May 1, 1900, after an engine of the defendant drawing a regular passenger train of eight cars had passed southeasterly along the railroad, a fire, which subsequently consumed the buildings, was discovered in some combustible material 106 feet northeasterly from the railroad. It was a dry time, and a strong wind was blowing across the track from the southwest. As the engine passed at the usual speed of about 35 miles an hour, sparks and cinders flew from its smokestack, and some of them were blown into an open window of one of the cars and were probably of the size of a navy bean. When the plaintiffs had established these facts they rested their case, and the defendant introduced evidence to the effect that there were no defects in its locomotive, and that there was no negligence in its operation which could have caused the fire. The court then charged the jury to return a verdict for the defendant, and this instruction is the first alleged error, which is specified.

It is the duty of the trial court to direct a verdict at the close of the evidence in two classes of cases: (1) That class in which the evidence is undisputed; and (2) that class in which the evidence is conflicting but is of so conclusive a character that the court in the exercise of a sound judicial discretion would set aside a verdict in opposition to it. And, where the trial court has directed a verdict upon the latter ground, the appellate court may not lawfully reverse the judgment founded upon it, unless upon a consideration of the evidence it is convinced that it was not of such a conclusive character that the court below in the exercise of a sound judicial discretion should not have sustained a verdict in the opposite direction. Patton v. Tex. & Pac. Ry. Co., 179 U. S. 658, 660, 21 Sup. Ct. 275, 45 L. Ed. 361; Randall v. Baltimore & Ohio R. Co., 109 U. S. 478, 481, 482, 3 Sup. Ct. 322, 27 L. Ed. 1003; Marshall v. Hubbard, 117 U. S. 415, 417, 419, 6 Sup. Ct. 806, 29 L. Ed. 919; Treat Mfg. Co. v. Standard Steel

& Iron Co., 157 U. S. 674, 15 Sup. Ct. 718, 39 L. Ed. 853; Riley v. Louisville & N. R. Co., 66 C. C. A. 598, 133 Fed. 904; Haggerty v. Chicago, Milwaukee & St. Paul Ry. Co. (C. C. A.; decided at the September, 1905, term), 141 Fed. 966; Waters-Pierce Oil Company v. Van Elderen (C. C. A.) 137 Fed. 557, 569, 571; Chapman v. Yellow Poplar Lumber Co., 32 C. C. A. 402, 404, 89 Fed. 903, 905; New York Central, etc., R. Co. v. Difendaffer, 62 C. C. A. 1, 3, 125 Fed. 893, 895; Shoup v. Marks, 62 C. C. A. 540, 545, 128 Fed. 32, 37.

The court below directed the verdict on this ground, and the question is: Should that court in the exercise of a sound judicial discretion have sustained a verdict upon the evidence in this case to the effect that the defendant failed to exercise ordinary care to avoid setting a fire to Woodward's property by the operation of its railroad? For the gravamen of this action is not the setting of the fire, but the negligence of the defendant whereby the fire was kindled. The railroad company had the same right to operate its railroad by the use of engines, cars, fire, and steam near the premises of Woodward that the latter had to carry on his farm by the use of horses, men, machinery, steam, and electric power in proximity to the railroad. The limit of the duty of each was to exercise ordinary care to prevent injury to the property of the other by the use of his own. Neither was liable to the other for injuries which resulted from the use of his own property, notwithstanding his exercise of reasonable care to prevent them.

There was undisputed evidence that the use of the most approved devices and machinery and the reasonably careful operation of locomotives will retain only about 75 per cent. of the sparks necessarily manufactured in their operation, while about 25 per cent. thereof will be unavoidably thrown forth from the smokestack upon the air. If the property of Woodward was injured by one of these sparks whose escape ordinary care could not have prevented, the company was not liable for the damage caused thereby, because that damage was not the result of any negligence on its part, and it owed him no duty to avoid damages which reasonable care could not prevent.

There was evidence in this case from which a jury might have inferred that the fire was set by a spark thrown from the smokestack of the defendant's locomotive. The specific question, therefore, which the court was called upon to determine, was whether or not the evidence was so conclusive that this spark was not one of the 75 per cent. whose escape might have been prevented by ordinary care that a verdict to the contrary could not have been lawfully sustained. The statute of Minnesota did not relieve the court from the determination of this question. It provides that:

"All railroad companies or corporations operating or running cars or steam engines over roads in this state shall be liable to any party aggrieved for all damage caused by fire being scattered or thrown from said cars or engines, without the owner or owners of the property so damaged being required to show defect in their engines or negligence on the part of their employés; but the fact of such fire being so scattered or thrown shall be construed by all courts having jurisdiction as prima facie evidence of such negligence or defect." Gen. St. Minn. 1894, § 2700.

Statutes of the same nature have been adopted in the adjoining states of North Dakota and South Dakota. These statutes were passed

because it was so difficult for claimants of damages caused by fires set by railroad companies to establish in the first instance the facts that their locomotives were defective, or that they were negligent in their operation. The purpose of the legislators in enacting these laws was simply to change the burden of proof so that the defendants might be required to produce the witnesses at their command who were familiar with the facts on which the evidence of negligence depends. The practical and legal effect of these statutes corresponds with the reason for their existence. It is to raise a presumption from the scattering of coals or sparks of fire or the setting of a fire by a locomotive that there was either a defect therein, which might have been avoided by the exercise of reasonable care, or negligence in its operation. This presumption, however, is not a conclusion of law. It is nothing but an artificial, rebuttable presumption of fact whose sole office is to change the burden of proof. When that result has been attained, the presumption becomes functus officio. It may not be used after the evidence of the facts has been adduced to raise an issue for the jury which the evidence itself does not present. Hence, in the first instance, it is always a question of fact for the court at the close of the evidence whether or not the presumption of negligence arising from these statutes has been overcome by the evidence of the care exercised by the defendant. If the proper employés of the railway company have testified to the effect that there were no defects in the locomotive, or that reasonable care had been used to avoid them, and that the engine was operated with ordinary care and skill, and the evidence at the close of the trial is so conclusive that an opposite finding is not sustainable, the statutory presumption has been overcome as a matter of law, and it is the duty of the court to instruct the jury in a fire case from these states, as in other cases, to return a verdict for the railway company. Rosen v. Chicago G. W. Ry. Co., 27 C. C. A. 534, 536, 83 Fed. 300, 302; Karsen v. Railroad Co., 29 Minn. 12, 14, 15, 11 N. W. 122; Daly v. Railway Co., 43 Minn. 319, 45 N. W. 611; Smith v. Railroad Co., 3 N. D. 17, 23, 53 N. W. 173; McTavish v. Great Northern Ry. Co. (N. D.) 79 N. W. 443, 446; Spaulding v. Railroad Co., 30 Wis. 110, 123, 11 Am. Rep. 550; Id., 33 Wis. 582; Huber v. Railway Co., 6 Dak. 392, 43 N. W. 819; Koontz v. Navigation Co. (Or.) 23 Pac. 820; Railroad Co. v. Talbot, 78 Ky. 621; Railroad Co. v. Packwood, 7 Am. & Eng. Ry. Cas. 584; Louisville & N. R. Co. v. Reese, 85 Ala. 497, 5 South. 283, 7 Am. St. Rep. 66.

The engineer and fireman who operated the locomotive, and other witnesses who dealt with it before and after the fire, testified in detail to facts which tended to show that it was equipped with suitable appliances in perfect condition for arresting sparks, and that it was carefully and skillfully operated on the day of the fire. Counsel for the plaintiffs in error contend, for various reasons which will now be considered, that the evidence of the exercise of ordinary care by the railway company was not conclusive. There was evidence that the country and the weather were dry, that there was a strong wind blowing across the track toward Woodward's buildings from the

southwest, that there was great danger of setting them on fire on account of their proximity to the railroad and on account of the combustible materials of which they were composed and with which they were surrounded. It is insisted that this situation demanded of the defendant a diminution of the speed of its train as it passed the buildings, while the fact was that it passed on schedule time at the ordinary speed of that train at that place, about 35 miles per hour. It is hardly probable that less speed, which would have detained the locomotive opposite the buildings a longer time, would have decreased the danger. Moreover, the primary duty of the railway company was to the state and to the passengers. It was to operate its railroad with reasonable speed at regular times to accommodate passengers and shippers. It owed this duty to the state, and its obligation to discharge it was the consideration of its charter. There is no evidence that the locomotive had previously set any fires, or that there was any reason to suppose that its ordinary operation would fire the buildings of Woodward. The stoppage or material diminution of the speed of its train by a railroad company on dry and windy days at isolated buildings near its track, under such circumstances, is incompatible with the proper discharge of its duty as a common carrier, and this company cannot be held to have been negligent in the discharge of its duty to Woodward in this case, because it drove its engine past his property at its usual speed.

The southern end of the trip of this locomotive on the day of the accident was at La Crosse in the state of Wisconsin. At that place were two dispatchers whose business it was to receive the engine when it arrived and to take it to the roundhouse. There was less danger of the escape of sparks during the operation of the railroad immediately after coals had been spread upon the fire in the box and when the firebox was closed. It is said that the fireman testified at the first trial that he had no recollection of seeing the dispatchers at La Crosse on the day of the fire, that he testified at the second trial that he distinctly remembered seeing them, and upon cross-examination that he had no recollection of seeing them, but that they were there every night as he remembered, that as he approached Woodward's place on the day of the fire he opened the firebox four times and spread four shovels full of coal evenly over the fire in the grate of the locomotive during 26 seconds while he was traveling 80 rods; and it is further said that his testimony is shifty and evasive and shows that he opened the firebox while passing the buildings that were burned. Whether or not this fireman saw the dispatchers on the night of the fire is not material, because without his testimony the evidence is conclusive that one of them received the engine and delivered it to the roundhouse. The only basis for the claim that the fireman opened the firebox while he was passing the buildings is the argument that 26 seconds is too short a time in which to open and close the door of the box four times and to put four shovels full of coal on the grate. But it is not impossible to do so. The fireman testified that it was his customary practice to do so just before he arrived at the burned buildings, that he did so on this occasion, and that the firebox

was closed while the locomotive was passing the improvements. His evidence upon this subject was not shaken on cross-examination, and it was not contradicted by any witness, fact, or circumstance. A finding by a jury to the contrary would have been without support in the evidence, and the court would have been obliged to avoid it.

Attention is called to the testimony that sparks about the size of navy beans escaped from the smokestack. But there is no evidence that sparks of this size could not have passed through the most modern and approved spark arrester, and undisputed evidence that this engine was equipped with such a device and that it was in perfect condition.

It is said that the netting provided to arrest sparks was not produced in evidence at the trial. But, as the testimony regarding it was undisputed and presented no issue, its absence was immaterial.

The contention is made that there is no trace of the engine and of the netting from the time they were delivered at the coal dock at La Crosse by the engineer on the evening of the fire. But Hiscox, one of the dispatchers at La Crosse, testified that either he or Cole took the locomotive from the dock to the roundhouse, and that he inspected it and found it in perfect condition. Green, the night foreman of the roundhouse, testifies that Hiscox made a written report that the engine was in good condition, and that no repairs or changes were required or made upon it that night. The engine returned to Minneapolis the next day where it was again inspected and found to be in perfect condition.

There was evidence that at the time of the fire there were no screens and no netting over the dampers to the ashpan, and that some railroad companies had equipped their ashpans with such devices. But the ashpan of this locomotive was carried along beneath the engine between the rails. It was 8 to 10 inches deep, 32 inches wide, and 6½ feet long. As it passed the burned buildings it was moving at the rate of 35 miles per hour with the rear damper open and the front damper closed. Two witnesses said that it was possible for coals to escape from it, but no witness testified that he had known of fire being blown or carried more than 8 feet beyond the rails in case of its escape. It is incredible that coals from this ashpan could have traveled over the rail and over the highway and have first set fire 106 feet distant from the railroad. The result is that the evidence was conclusive that if the fire was set by the engine it was kindled not by fire or coals from the ashpan, but by sparks from the smokestack, that the locomotive was equipped with approved appliances in perfect condition to prevent as far as possible the escape of such sparks, and that the engine was carefully and skillfully operated. This action has been twice tried. At the first trial the jury considered the evidence and found that the defendant was guilty of no negligence. At the second trial the court decided that the exercise of reasonable care by the railroad company was so conclusively proved that it could not sustain a verdict for the plaintiffs. It had the same opportunity as the jury to observe the appearance and demeanor, and to judge of the credibility, of the witnesses and its considered opinion

should receive consideration and respect. Patton v. Tex. & Pac. Ry. Co., 179 U. S. 660, 21 Sup. Ct. 275, 45 L. Ed. 361. A deliberate review and careful digest of the printed evidence has convinced that there was no mistake in the conclusion of the court below, and that no court could in the exercise of a sound judicial discretion sustain a verdict for the plaintiffs upon this evidence. There was therefore no error in the instruction for the defendant.

When the engine arrived at La Crosse the engineer made a record in his own handwriting, which was delivered to Green, the foreman of the roundhouse. The latter testified on his direct examination that he knew there were no changes or repairs made on the engine that night. On cross-examination he said that he had no personal recollection of the matter, but that he had a record. On redirect examination he was shown the record. He testified that he recognized it as the handwriting of the engineer, that he received it about 8:30 in the evening of the day of the fire for the purpose of learning whether any repairs would be needed upon the engine, and that he turned it over to some other person the next morning. He said that he knew that the record was accurately kept, that if any repairs had been made the back of this record would have shown this fact, and that he could state from an inspection of the record whether any repairs or changes had been made that night. It is specified as error in this state of the record that the court permitted the witness to testify, over the objection that no foundation had been laid which permitted the witness to use this memorandum to refresh his memory, as follows:

"Q. Then referring to defendant's Exhibit A (the record), I will ask you whether there were any repairs or changes made upon that engine that night at North La Crosse?

"A. No, sir; no changes were made at all."

But there was no error in this ruling. It is perfectly competent for one to examine a deed, mortgage, or other instrument and to testify from the absence of his own handwriting thereon that he never wrote or signed it, and, where one knows that a certain record contains a note of every act done by him or by his department, he may lawfully testify to this knowledge, and from the absence of any record of the act he may depose that the act was not done by him or by those under his control. Such a use of a record may not be competent to refresh the memory because it may not have that effect, but the record and the testimony in the absence of memory constitute the best evidence of the fact that the act was not done, and for that reason they are admissible to prove it.

The fire was set on May 1, 1900. Counsel for the plaintiffs objected to the testimony of witnesses that on April 5th, 11th, 18th, and 24th, respectively, preceding, they examined the netting and all the parts of the engine which in any way affected the arresting of sparks and found them in perfect condition, upon the grounds that the witnesses testified from records and their knowledge, and not from memory, and that the evidence was too remote, and they specify its ad-

mission over these objections as error. The first ground of these objections is untenable for the reasons which have been stated. Was the evidence too remote? The last examination was only seven days before the fire. The evidence was that the machinery had continued in the same good condition for 20 days preceding that examination, and it was all admissible in connection with the rule of law that a condition once shown is presumed to continue for a reasonable time, unless the contrary is shown, because it had a strong tendency to prove that the device for arresting sparks continued in good condition until the time of the fire.

Finally, counsel for plaintiffs contend that the court erroneously permitted the traveling engineer of the defendant to testify that for a number of years the defendant had required its firemen on passenger trains, and that it had been their custom, to inspect dampers, ashpans and dump grates before they started on their trips in order to see that they were clean and in good order, and that the railroad company had required both firemen and engineers to report what, if anything, was needed. But the question at issue here was whether or not the defendant had exercised ordinary care in the operation of its railroad, and this evidence was clearly competent and material upon this issue, because it had a direct tendency to prove the degree of care which it used. It may be that the requirement and the custom tended to show extraordinary care, but the evidence is not inadmissible upon that ground, because the greater care includes the less and is competent evidence of it.

There was no error in the trial of this case, and the judgment below must be affirmed. It is so ordered.