NATIONAL STEEL CO. v. HORE.

(Circuit Court of Appeals, Sixth Circuit. June 15, 1907.)

No. 1,632.

1. MASTER AND SERVANT—INJURY OF SERVANT—ASSUMPTION OF RISK.

To defeat recovery for an injury to a servant by the defense of assumption of risk, the master must show not only that the servant knew of the negligence of which he complains, but that he knew and understood, or ought to have known and appreciated, the increased danger to which he voluntarily exposed himself by reason of such negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 575.]

2. SAME.

A copper water block in the wall of a blast furnace being operated by defendant blew out, and plaintiff, who was a plumber's helper in defend-

ant's employ, was injured by the molten metal which escaped. The block, which was embedded in the wall, had become leaky, and preparations had been made to remove it, which could only be done when the blast was off. After much of the cement packing which held it in the wall had been removed, it was decided to allow it to remain for some hours, until the next blast should be off, in order to make repairs to the water system, which had also become defective at the same time. When the removal was about to be made, and while the furnace was still being operated, plaintiff was ordered upon a platform near the block to shut off the water, when the block was pulled, and was there when it blew out. *Held* that, although plaintiff knew of the defective water system, that the furnace was in full blast, and that a part of the packing had been removed from around the block, it could not be said as matter of law that he assumed the risk arising from such conditions, where it did not appear that he knew the dangers therefrom, or that his experience had been such that he should have known that there was danger that the block would blow out.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1068, 1077.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the Circuit Court of the United States for the Eastern Division of the Southern District of Ohio.

James C. Tallman, for plaintiff in error.
Fred S. Gates, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. By the sudden blowing out of a copper water block in the wall of one of the blast furnaces operated by the National Steel Company, John Hore, a plumber's helper, in the employment of the company, sustained severe injuries, for which he has recovered a judgment.

The facts essential to be stated are these: One of these blocks became leaky, and, preparatory to pulling it out to replace it with another, the plaintiff, John Hore, was directed by the manager of the furnace to ascend to a small platform, conveniently placed for removing this block, for the purpose of being ready to disconnect the iron water pipe which supplied it with water. Almost immediately upon his reaching his proper place, and before the blast had been shut off, this block blew out, and the molten contents of the furnace were ejected with great force in every direction.

These water blocks were hollow blocks of copper placed in many places in the wall of the furnace, through which, for the purpose of cooling the walls, a constant circulation of cold water was maintained. There was evidence tending to show that a water block could be pulled only when the blast was off, and that it was usually done when the blast was off for making a cast. Preparation for removing this block at the 9 o'clock morning cast had been made by removing much of the cement packing which held it in the wall and by giving direction to the plumber and his helper, Hore, to be ready then to disconnect the water pipe connections. There was evidence tending to show that not long prior to 9 o'clock it was reported to the manager that the filter in the water tank was clogged, and the brush, which was the mechanism

used for cleaning it, had gotten out of repair and would not operate. Thereupon the manager directed that preparation should be made for repairing the water system at the 12 o'clock cast, and the pulling of this water block postponed until then, that both jobs might be done when the blast should be shut off at 12 o'clock. The petition avers that it was negligent to keep the hot air blast on with a defective water circulation through a water block thus weakened by the cutting away of the cement casing which held it in place.

The case has been made to turn in the argument here chiefly upon the question as to whether Hore did not assume all the risks incident to assisting in the removal and replacing of this water block. This defense was made by demurrer to the petition, by request for a peremptory instruction, by request for special charges bearing upon the doctrine of assumption of risk, and by exceptions to parts of the charge as delivered. The demurrer was rightly overruled.

The petition does not deny that plaintiff knew that the water system had broken down, that the packing had been in part removed from around this block, nor that the furnace was being operated under full blast, when in obedience to the order of the master he took his place near this water block to disconnect its water connections. But it does aver that he was "ignorant of the danger" resulting from this state of facts. Now, knowledge of the conditions which surround the doing of a thing by a workman does not always imply knowledge of the dangers which confront him. The fact known, the defect which he sees, or should see if ordinarily observant, may present dangers so obvious that the law will conclusively presume that he did know the danger; no other inference being reasonable. Indeed, the inference in some circumstances is so strong that the denial of appreciation will be of no avail, for the law will say: "You should have known if you had been reasonably attentive to your own safety." Cooley on Torts, 1042 (3d Ed.), and cases cited. Cases in which this court has indulged the presumption of a voluntary assumption of risk are not rare in our opinions. See Detroit Crude-Oil Co. v. Grable, 94 Fed. 73, 36 C. C. A. 94; Railroad Co. v. Hennessy, 96 Fed. 713; Narramore v. Cleveland, etc., Ry. Co., 96 Fed. 298, 37 C. C. A. 499, 48 L. R. A. 68; Kenney v. Meddaugh, 118 Fed. 209, 55 C. C. A. 115; and Riley v. Louisville & Nashville R. R. Co., 133 Fed. 904, 66 C. C. A. 598. See, also, Reed v. Moore & McFerrin, 153 Fed. 358, and Coal Creek Co. v. Davis, 90 Tenn. 715, 716, 18 S. W. 387.

In the Grable Case, cited above, the contention was that, while the plaintiff might know of the defect by which he was hurt and be chargeable with knowledge of danger therefrom, "he did not anticipate being hurt in the way he was," and therefore a risk not assumed by the plaintiff. But in that case it appeared that the defect was known to the plaintiff and had been complained of. The court also found that the plaintiff was a mature and experienced man, and the danger to be apprehended presumably better known to him than the master. This court therefore said:

"When the defect is known, and the danger apparent, it is immaterial that the servant does not anticipate the precise extent or character of the injury which may result. None of the authorities upon the subject put the rule of

assumption of risks upon the narrow distinction that the servant may know of the danger, but not fully realize the extent or character of the injury which may be sustained."

On the other hand, this court has more than once held that the question whether one had knowingly assumed the risk of a particular defect was dependent upon the particular circumstances of the case, and, when more than one inference might be drawn, reasonably, it was a question for the jury. Valley Ry. Co. v. Keegan, 87 Fed. 849, 31 C. C. A. 255; Felton v. Girardy, 104 Fed. 127, 43 C. C. A. 439; Mason, etc., Ry. Co. v. Yockey, 103 Fed. 265, 43 C. C. A. 228; and Choctaw, etc., Ry. Co. v. McDade, 112 Fed. 888, 50 C. C. A. 591.

In the Keegan Case we said:

"Before a court is authorized to presume, as matter of law, that an employé accepts the dangers incident to defective machinery or roadbed, it must appear that he accepted employment with actual knowledge of such defect and its dangers, or that he continued in the service after he acquired knowledge, or by due care and reasonable attention might have known of the danger. To justify a presumption of knowledge, the defect must be obvious and its danger equally plain to one at all attentive. The facts here do not make a case where the court could justifiably say that Keegan's ignorance of the dangerous character of this space in the roadbed was unjustifiable in law, and his acceptance of the risk presumed."

The fact that plaintiff was a mature man and had had some experience about this furnace might well charge him with the assumption of the ordinary risks of his employment, including those which might ordinarily inhere in the replacement of a leaky water block. But the facts stated in the petition present a concurrence of circumstances which might or might not indicate danger that the block might blow out. It was the duty of the plaintiff in error to guard against such accidents as could be foreseen as liable to occur by the exercise of reasonable care, and the defendant in error had a right to assume that the master had not unreasonably and negligently subjected him to danger that this block would blow out. To assume as matter of law that a common laborer, such as Hore was, should have known that there was this danger from the facts known to him, is going too far. To determine the effect of the conditions known to him in producing hazard, not ordinarily incident to his service in aiding in the disconnection of the water pipes supplying the block to be removed, would require a skill and judgment which ought not to be attributed, as matter of law, to one who is described in the petition as a plumber's helper and whose experience about such work does not appear.

To defeat an action by the defense of assumption of risk, the employer must show not only that the servant knew of the negligence of which he complains, but that he knew and understood, or ought to have known and appreciated, the increased danger to which he voluntarily exposed himself. There is a distinction between knowledge of defects or knowledge of alleged negligent acts, and knowledge of the risks resulting from such defects or acts. In Cooley on Torts (3d Ed.) 1048, the rule is stated in these words:

"It is essential to the assumption of risk, not only that the servant shall know the defect out of which the danger arises, but that he should appreciate

155 F.—5

the danger, or that the danger should be manifest to a man of ordinary intelligence and experience in the line of work in which the servant is engaged."

This is in accord with the great weight of authority. Welle v. Celluloid Co., 175 N. Y. 401, 405, 67 N. E. 609; Iron Co. v. Pace, 101 Tenn. 476, 48 S. W. 232; Thomas v. Quaterman, L. R. 18 Q. B. Div. 1886–87, 685, 696 et seq.; Clark v. Holmes, 7 H. & N. 937, 949; Moylon v. McDonald, 188 Mass. 499, 74 N. E. 929; McDonald v. Champion Iron Co., 140 Mich. 401, 103 N. W. 829; and Hartrich v. Hawes, 202 Ill. 334, 67 N. E. 13.

Neither was there error in refusing to instruct the jury that under the facts the plaintiff had assumed the risk of the danger that this water block would blow out. The case was a somewhat close one upon the facts; but there was evidence that the plaintiff had had but a short experience about such a blast furnace as this was, though he had had a long experience about a puddling furnace and rolling mills as a common laborer. We are not prepared to say that the court erred in letting the case go to the jury upon this matter.

The assignments based upon the refusal of the court to give certain requests which were made by the defendant were grounded upon the theory that plaintiff's knowledge of the conditions necessarily involved knowledge of the danger that under such conditions this block might blow out. We need not go over this matter again. The ruling upon the demurrer covers this matter as well as the exceptions to the charge as given, which was the converse of these requests. The case in respect to the points not involved in the doctrine of assumption of risks is substantially identical with National Steel Co. v. Lowe, 127 Fed. 311, 62 C. C. A. 229. This accident and the injury to Lowe occurred at the same time, and the trial judge applied the principles determined in that case to this. The assignments of error which raise questions there decided are overruled upon the authority of that case.

Judgment affirmed.

NOTE.—The following memorandum was filed in the clerk's office of the District Court in this cause on overruling the motion for a new trial:

The evening before the accident, Thomas, the general superintendent, directed Chisholm, the plumber, to be ready to take the block out the next morning, and during the night a part of the packing about the block was removed, and the next morning Chisholm disconnected the pipes and put gum hose in their place, and afterwards told Thomas that the brush on the strainer in the water tank "had become disconnected," and Thomas then postponed the removal of the block from 9 o'clock to 12 o'clock a. m., saying that he would "fix both things at 12 o'clock," the brush and the block. In the meantime the platform 4 or 5 feet high had been erected to enable the men to reach the block, and the necessary appliances for its removal were provided. Thomas, the general superintendent, was present supervising the work. The situation was described by the plaintiff on the witness stand, as follows: "At the 12 o'clock cast we were standing around there by the orders to get ready; each man at his post ready to go to work. * * *" And Thomas said: "Now then, John, you and Bogus go up there and get ready to break that connection." In obedience to that order the plaintiff got on the platform, and in a minute or two the explosion took place. Thomas supervised the work from the beginning to the end. The accident was not caused by the negligence of the fellow servants of the plaintiff. It was not caused by the fact or the manner of the removal of a part of the mortar packing, nor by any unskillfulness in the repair of the water apparatus, but was caused by the negligence of the master in delaying

the repair of the water apparatus and the removal of the water block until 12 o'clock the next day, in the meantime continuing the operation of the furnace in full blast, thereby subjecting the block, in its weakened condition, to the constant pressure from within the furnace which finally drove it out after the heat of the furnace had burned its end off, and had softened the mortar packing which had not been removed the night before. The water supply having failed, and no other means having been provided for keeping the block cool, the heat of the furnace burned its end off and necessarily tended to soften the mortar packing and weaken its resistance to the pressure from the furnace. Only the master could suspend the operation of the furnace, only the master could direct the removal of the block and fix the time for its removal, and only the master could postpone the removal of the block so that the removal and the repair of the brush could be done at the same time, and clearly the negligence which caused the injury to the plaintiff was the negligence of the master, and not of his fellow servants.

The suggestion of counsel for the defendant that the explosion was caused by the introduction of cold water into the block is not supported by any evidence. Manifestly the end of the block had been burned off some time before the accident, and, in the condition in which it was left, the steam could not have been so confined as to cause an explosion. Besides, the testimony of Gabriel Redmond, upon which defendant relies, shows that his attention was called by a fellow servant, two or three minutes before the accident, to the fact that the water was not running through the discharge pipe leading to the block, but Redmond did not attempt to remedy the fault which prevented its flow, because, as he testified: "If I had, I wouldn't be here now." It was then too late to cool the block and his refusal to attempt to restore the flow of water, under the circumstances, was not an act of negligence.

But it is further claimed that two of the fellow servants of the plaintiff, in using a wrench shortly before the accident, put a strain on the block which contributed to or caused the accident. Whatever was done immediately preceding the accident was done in the presence of and under the supervision and direction of the general superintendent, Thomas, and the evidence does not show that these fellow servants acted upon their own initiative; but, if it be assumed that they did, and that what they did was an act of negligence which in any manner contributed to the accident, then the injury to the plaintiff was caused by the joint or concurrent negligence of these servants and the master, and the master is liable. Railway v. Cummings, 106 U. S. 700, 27 L. Ed. 266; Deserant v. Railway Co., 178 U. S. 409, 20 Sup. Ct. 967, 44 L. Ed. 1127.

If the water supply had been restored in the morning, or the block taken out at 9 o'clock of that morning, the accident would not have occurred. The master, by delaying the repair of the water apparatus and the removal of the block at the appointed time (9 o'clock in the morning), created conditions of danger unknown to these servants, which they, in making the customary preparations for its removal at 12 o'clock, might add to unwittingly. The situation therefore required the supervision of the master which was given it by the general superintendent, who represented the master.

The motion for a new trial will therefore be overruled.